GOLD KIST, INC., and the Pillsbury Company, Plaintiffs,

The National Council of Farmer Cooperatives, Plaintiff-Intervenors,

Clifford M. Hardin, Secretary of Agriculture of the United States, Intervening Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Refrigerated Transport Co., Inc., et al., Defendant-Intervenors.

Civ. A. No. 1415.

United States District Court,
N. D. Georgia,
Gainesville Division.

Dec. 31, 1971.

Joe K. Telford, Telford, Stewart & Stephens, Gainesville, Ga., for Gold Kist, Inc. and The Pillsbury Co.; John F. Donelan, John H. Caldwell, Donelan, Cleary & Caldwell, Washington, D. C., of counsel.

James S. Krzyminski, Washington, D. C., for The National Council of Farmer Cooperatives; William B. Spann, Jr., Alston, Miller & Gaines, Atlanta, Ga., of counsel.

Charles W. Bucy, Asst. Gen. Counsel, Kenneth H. Vail, Atty., Office of the Gen. Counsel, U. S. Dept. of Agriculture, Washington, D. C., for Clifford M. Hardin, U. S. Secretary of Agriculture.

Fritz Kahn and Charles White, Office of the Gen. Counsel, I. C. C., Washington, D. C., for the United States, and I. C. C.

Howard E. Shapiro, Atty., Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., John N. Mitchell, U. S. Atty. Gen., Dept. of Justice, Washington, D. C., Richard W. McLaren, Asst. Atty. Gen., Antitrust Div., for the United States.

Alan E. Serby, Watkins & Daniell, Atlanta, Ga., for Refrigerated Transport Co., Inc.

Alan E. Serby, Watkins & Daniell, Atlanta, Ga., Peter T. Beardsley, Richard A. Mehley, Washington, D. C., for American Trucking Assn., Inc.

Paul M. Daniell, Alan E. Serby, Atlanta, Ga., for Frozen Food Express, Inc.; Watkins & Daniell, Atlanta, Ga., of counsel.

Alan E. Serby, Watkins, Daniell & Serby, Atlanta, Ga., James E. Wilson, Lawrence E. Lindeman, Wilson, Woods & Villalon, Washington, D. C., for Common Carrier Conference—Irregular Route of the American Trucking Assns., Inc.

Eugene D. Anderson, Washington, D. C., Watkins, Daniell, Davis & Serby, Atlanta, Ga., for Midwest Packers Traffic Assn.

Alan E. Serby, Atlanta, Ga., Ed White, Chicago, Ill., Thomas A. Phemister, Chicago, Ill., for The Atchison, Topeka and Santa Fe Railway Co., and others; Watkins & Daniell, Atlanta, Ga., of counsel.

Before MORGAN, Circuit Judge, SMITH and FREEMAN, District Judges.

PER CURIAM:

Under 28 U.S.C. § 1336, this court is asked to enjoin and set aside an order of the Interstate Commerce Commission [1] declaring that motor carriers carrying (1) cut-up, precooked or cooked frozen or refrigerated poultry, (2) cut-up, precooked or cooked breaded or battered, frozen or refrigerated poultry, and (3) cut-up, precooked or cooked, marinated, breaded and/or battered frozen or refrigerated poultry [2] in interstate or foreign commerce are not within the agricultural exemption provided by Section 203(b) (6) of the Interstate Commerce Act, 49 U.S.C. § 303(b) (6), and, therefore, are subject to economic regulation by the Commission.

Plaintiffs present two basic arguments: (1) that in light of the legislative history of Section 203(b) (6), the

1. The Commission's opinion is reported at 113 M.C.C. 225 (1971).

2. The description of the processing of the commodities involved was stipulated in this court as follows:
   "Live chickens, grown by petitioner's farmer members, are placed on an assembly line and then killed by severing the head at the jugular vein. From this point, the chickens are scalded in water; picked of all feathers; cut and eviscerated (various glands, gizzard, heart, liver, and intestines and associated organs are removed) ; and then chilled in tanks where the birds' temperatures are reduced to below 35° F. After chilling, birds are rehung for drainage and then transferred to scales for weight classification. They are then packed and moved to refrigerated or frozen storage prior to additional processing or direct movement to market. Those poultry selected for further processing receive all or combinations of the following processing steps: (1) *precooking*, the partial cooking of the meat so that further cooking is required before consumption; (2) *cooking*, full cooking of the chicken, including frying in oil, so that only warming is necessary before consumption; (3) *breading*, a coating applied in dry form to a poultry part; (4) *battering*, a wet or pasty coating applied to a poultry part, possible in combination with breading; and (5) *marinating*, the immersion of a poultry part for a period in a solution of water and flavoring. Marinating does not change the appearance of the poultry thus processed, whether the poultry is raw or cooked and breaded.
   The gizzards are 'peeled' mechanically and later combined with the heart, liver, and neck as a giblet pack, or each may be sold separately as a refrigerated or frozen part."
   At least one intervenor has objected that the facts as developed by the Commission are incomplete in that they exclude the difference in market value of raw poultry and the poultry here, the research and development leading to the marketing of these products, the degree of industrialization necessary for the processing, and other factors which it contends could furnish probative evidence on the question of "manufacturing." These factors are deemed unnecessary to the court's holding, as are other arguments tending to show the industrial or conversely the agricultural character of the plaintiffs. This decision does not revolve around "who" is directly involved in the case, but rather "what" is done to these commodities. See footnote 3, East Texas Motor Freight Lines v. Frozen Food Exp., 351 U.S. 49 at 54, 76 S.Ct. 574, 100 L.Ed. 917 (1956).

Commission erred in construing that section not to exempt cooked poultry, and (2) that the Commission erred in finding these cooked poultry items were manufactured products under the "continuing substantial identity" test developed by the Supreme Court in East Tex. Motor Freight Lines v. Frozen Food Exp., 351 U.S. 49, 76 S.Ct. 574, 100 L. Ed. 917 (1955).

Historically, the agricultural exemption, as part of the Motor Carrier Act of 1935, was intended to aid farmers in getting low cost transportation to market for their commodities by relieving them of the burdens of economic regulation. By a continuing process beginning about 1948, the exemption was extended, primarily by judicial interpretation, to reach the transportation of commodities that had received varying degrees of commercial processing. See, e. g., Interstate Commerce Comm'n v. Love, 77 F. Supp. 63 (E.D.La.1948), aff'd mem. 172 F.2d 224 (5th Cir. 1949); Frozen Food Exp. v. United States, D.C., 148 F. Supp. 399, aff'd mem., sub nom. Akron,

Canton & Youngstown R. R. Co. v. Frozen Food Express, 355 U.S. 6, 78 S.Ct. 38, 2 L.Ed.2d 22 (1957). This increase in the number of commodities that could be carried by unregulated carriers had a detrimental impact on regular regulated motor carriers. During the early fifties, Congress twice failed to enact legislation which would have narrowed the scope of the agricultural exemption. Interstate Commerce Comm'n v. Allen E. Kroblin, Inc., 113 F.Supp. 599, 630 (N. D.Iowa 1953). However, in 1958 Congress did pass as part of the 1958 Transportation Act an amendment to Section 203(b) (6) designed to help regulated carriers by restricting the class of commodities due exempt status.[3]

The narrowing of the exemption was accomplished by incorporating, with modifications, Administrative Ruling No. 107 of the Commission's Bureau of Motor Carriers into section 203(b) (6). This ruling consists mainly of a list of commodities each of which is shown as exempt or nonexempt. See 49 C.F.R. § 1047.25. The effect of this amendment

---

3. Prior to its amendment in 1958, the agricultural exemption provision of Section 203(b) (6) of the Interstate Commerce Act, 49 U.S.C. § 303(b) (6), read as follows:

Nothing in this part, except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation; * * *

It was amended by section 7 of the Transportation Act of 1958 (Public Law 85–625, approved August 12, 1958), 72 Stat. 573, 49 U.S.C. § 303(b), which provides as follows:

(a) Clause (6) of subsection (b) of section 203 of the Interstate Commerce Act, as amended, is amended by striking out the semicolon at the end thereof and inserting in lieu thereof a colon and the following: *"Provided,* That the words 'property consisting of ordinary live-

stock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)' as used herein shall include property shown as 'Exempt' in the 'Commodity List' incorporated in ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission, but shall not include property shown therein as 'Not exempt': *Provided further, however,* That notwithstanding the preceding proviso the words 'property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof)' shall not be deemed to include frozen fruits, frozen berries, frozen vegetables, cocoa beans, coffee beans, bananas, or hemp, and wool imported from any foreign country, wool tops and noils, or wool waste (carded, spun, woven, or knitted), and shall be deemed to include cooked or uncooked (including breaded) fish or shell fish when frozen or fresh (but not including fish and shell fish which have been treated for preserving, such as canned, smoked, pickled, spiced, corned or kippered products) ;".

of the agricultural exemption was described by congressional committees as freezing and slightly rolling back the exemption's scope. The freeze was accomplished by the legislative incorporation of the Administrative Ruling into the statutory exemption thereby precluding judicial review of the Commission's classification of many items as nonexempt. The roll-back was accomplished by stating in section 203(b) (6) that some products previously considered exempt were not exempt. Although the general purpose of the 1958 Transportation Act's amendment to section 203(b) (6) was to narrow the exemption, the exemption was expressly expanded to include "cooked . . . (including breaded) fish" which the Commission had earlier ruled nonexempt. The cooked poultry items involved here are not specifically mentioned in Administrative Ruling No. 107 or Section 203(b) (6).

Plaintiffs contend that Congress intended that frozen cooked poultry be exempt, although it was not specifically mentioned in the 1958 amendment to section 203(b) (6).

Nothing in the committee reports preceding the amendment states that cooked poultry is or is not an exempt commodity. But, these reports are supplemented in this respect by explanatory floor remarks of Sen. Smathers, member of the

Committee on Interstate and Foreign Commerce, chairman of that committee's sub-committee on Surface Transportation which studied the proposed legislation to narrow the agricultural exemption, and manager of the bill amending the exemption when it was under consideration by the Senate. During the Senate's consideration of the bill, Sen. Williams of Delaware, one of the major poultry producing states, asked if cooked poultry would be an exempt commodity without the necessity of amendment; Sen. Smathers plainly answered in the affirmative, explaining that the matter had been discussed by both the subcommittee and full committee responsible for the bill.[4] This was the final and only word on the subject of the exempt status of cooked poultry in the bill's legislative history. It was uttered plainly and in such circumstances that it would not be unreasonable to conclude that had Sen. Smathers' answer been otherwise, the bill amending the agricultural exemption would have been subjected to change and likely would not have been passed by the Senate in the exact form it was. Because the Senate and House bills were not identical, a conference committee produced the final bill which became law. The agricultural exemption in the conference committee bill differed slightly from the Senate bill, but these differences did not affect cooked poul-

4. The pertinent colloquy is as follows (104 Cong.Rec. 10821):

Mr. WILLIAMS: It is my understanding that in the bill there is provided the same exemption for poultry and poultry products which is carried in the existing law. Is my understanding correct?

Mr. SMATHERS: The Senator is correct.

Mr. WILLIAMS: A question has also been raised about the fact that many poultry products are now being shipped in a cooked form from the plants. This form of shipment may be expanded over the next few years. Would the product be covered in such a cooked form, in the same manner as in the other form?

Mr. SMATHERS: This manner was discussed in the subcommittee and in the full committee. It was impossible to list as a part of the proposed legislation all the specific items which are being sought to be exempted, but we discussed the par-

ticular item of cooked chicken. It appears that cooked chicken will in a short time become the standard type of chicken to be transported. It was the view of the members of the subcommittee that the particular product should be exempt.

Mr. WILLIAMS: Was it the understanding that the cooked product would be exempt without the necessity for any additional amendments being offered to the bill?

Mr. SMATHERS: That was our conclusion.

Mr. WILLIAMS: That was my understanding, but I merely wanted to have it clear in the RECORD because many persons engaged in the industry were somewhat concerned about this question. I wanted to be sure we were correct in believing the exemption was included.

Mr. SMATHERS: The Senator is correct in his understanding.

try. Significantly, the Conference Committee's report in no way repudiated Sen. Smathers' explanation of cooked poultry's status as an exempt commodity. *See* 1958 U.S.Code Cong. & Ad. News 3488.

■ In its order, the Commission in a few words discounted the colloquy between Sen. Williams and Sen. Smathers as merely the discussion of two senators' views, insufficient to establish Congress' intent. The court disagrees. In Duplex Printing Press Co. v. Deering, 254 U.S. 443, 474–475, 41 S.Ct. 172, 65 L.Ed. 349 (1921) it was held that although debates in Congress expressive of the views and motives of individual members are not a safe guide to legislative intent, explanatory statements in the nature of a supplemental report made by the committee member in charge of the bill in the course of its passage may be regarded as an exposition of the legislative intent.

■ In an attempt to diminish the significance of Sen. Smathers' remarks, it is contended that Sen. Smathers was mistaken in saying cooked poultry would be exempt without an amendment, because it would be illogical for Congress to amend expressly the exemption to exempt cooked fish but consider cooked poultry exempt without a similar amendment. The court finds no obvious validity to this position, because, unlike cooked poultry, cooked fish had earlier been ruled nonexempt and appeared as nonexempt in Ruling No. 107. Therefore, in order to overrule that administrative classification Congress needed express language. Since cooked poultry had never been ruled nonexempt there was no compelling reason to say specifically it was exempt. In virtually every instance in which Congress expressly stated in the 1958 amendment itself that an item was or was not exempt, the item had earlier been held to be in the opposite category and appeared in Administrative Ruling No. 107. Defendants also argue that there is no evidence from the published committee hearings preceding the 1958 amendments to the exemption that the status of cooked chicken was actually discussed by the Senate committee and subcommittee as Sen. Smathers said. The court sees no reason to doubt Sen. Smathers' veracity in this matter. Actually only a small part of a legislative committee's work occurs in the hearings which are formally reported. Therefore, a committee member's words are not undermined by the fact that the described discussion does not appear in the published reports of the committee hearings.

■ The court consequently holds that Congress intended for cooked poultry to be exempt under section 203(b)(6). In reaching a conclusion contrary to the Commission, we are not unmindful of the deference due the Commission's construction of a statute which it is charged to execute. But as the Commission itself admitted in its order, the question of a statute's construction in light of its legislative history is one of law; and as a reviewing court, we are not obliged to stand aside and rubber stamp our affirmance of an administrative interpretation that we conclude is contrary to Congress' intent.

■ Next, it is argued that even if Congress intended for cooked poultry to be exempt as Sen. Smathers said, the particular products here are unexempt because they were recently developed and could not be the form of cooked poultry the Senators discussed in 1958. The Senators' discussion shows that they recognized the form cooked poultry would take might likely be expanded in the future; thus, the mere fact that a cooked poultry product might have been developed subsequently to 1958 does not mean that Congress did not intend for it to be exempt.

The last argument of defendants, however, leads the court to yet another question: When Sen. Smathers said that cooked poultry was exempt, did he also mean that any poultry product would be exempt if it is cooked? If so, then the poultry items here are exempt and nothing more need be said. The court con-

cludes, however, that all cooked poultry was not intended to be exempt; poultry items which would be unexempt, if uncooked, do not automatically become exempt merely by cooking. An example of a case in which cooked poultry was most likely properly concluded to be a manufactured product and nonexempt is Henningsen Foods, Inc., Petition for Declaratory Order, 106 M.C.C. 286 (1961) (cooked dehydrated chunk style poultry is not exempt under agricultural exemption).

Accordingly, the exempt status of the poultry in dispute here depends upon whether they would be exempt if they were uncooked, a question the Commission left unanswered directly.[5]

■■ Although the Commission has not considered specifically the status of uncooked poultry items such as the ones here, the court will not remand the case to the Commission for its consideration. The material facts here are undisputed and the application of Section 203(b)(6) to them is conceptually a matter of law.[6] Since neither plain, cut-up uncooked poultry, nor breaded or battered poultry, nor cut-up, uncooked, breaded or battered poultry, nor cut-up, uncooked, marinated breaded and/or battered poultry are

mentioned in Section 203(b) (6) or Administrative Ruling No. 107, whether they are "agricultural commodities (not including manufactured products thereof)" and, thus, exempt depends necessarily upon the "continuing substantial identity" test promulgated by the Supreme Court in East Tex. Motor Freight Lines v. Frozen Food Exp., 351 U.S. 49, 54, 76 S.Ct. 574, 100 L.Ed. 917 (1956). *See* Various Commodities Between Points and Places in U. S., 309 I.C.C. 573, 577 (1960).

■ While holding that frozen, dressed poultry was an exempt commodity, the court in *East Tex. Lines* said that agricultural commodities do not lose their exemption by incidental processing but only by "manufacturing". Thus, every change in a commodity does not require that it be nonexempt; to constitute "manufacturing," the change must produce a new and different product, and an article must emerge having a distinctive name, character or use. Furthermore, the court held that processing and manufacturing will merge at some point, "[b]ut where the commodity retains a continuing substantial identity through the processing stage . . . it has [not] been manufactured within the

5. The Commission did conclude that the cooked form of each of the items in this case was a manufactured product and, thus, unexempt. From the briefs and oral arguments, it appears that all parties considered the cooking process rather than the cutting-up, breading or marinating to be the primary basis for the Commission's conclusion. A review of Administrative Ruling No. 107 indicates that the Commission has heretofore tended to find that cooking a commodity makes it a manufactured product, e. g. unpopped popcorn is exempt but popped popcorn is not.

6. We realize that there is a conflict as to whether the application of a statute's terms to undisputed facts is a question of law, fact or a hybrid of the two. Even the leading commentators do not always agree. *See* 4 K. Davis, Administrative Law ch. 30 (1958, Supp.1970); L. Jaffe, Judicial Control of Administrative Action ch. 14 (1965). In the literal and analytical sense the question is one of

law, because it is a question as to the meaning of a statute's words. Nevertheless, courts have often labeled such questions as factual where for policy reasons they deemed it best to defer to an agency judgment rather than to review independently a particular issue.

In concluding that the application of Section 203(b) (6) to undisputed facts is a question of law, this court is not alone. The Commission in its opinion in this case considered the issues presented to be questions of law. 113 M.C.C. at 226. Moreover, in East Tex. Motor Freight Lines v. Frozen Food Exp., 351 U.S. 49, 76 S. Ct. 574, 100 L.Ed. 917 (1956) (5–4 opinion), the majority seemed to consider such a question one of law, although the minority classified the issue as one of fact.

Since we conclude we are faced with questions of law, it is not necessary to remand the case to the Commission for further consideration. Certainly a remand would unduly prolong the controversy.

meaning of § 203(b) (6)." 351 U.S. at 54, 76 S.Ct. at 577.

█ Considering first cut-up, uncooked, frozen or refrigerated poultry the court concludes that cutting up poultry, but not deboning it, does not produce a new product having a different name, use or character from chicken. Dressed poultry is exempt under Section 203(b) (6), and the court concludes that simply cutting-up the dressed poultry does not make it "manufactured." [7]

Next, the court considers the status of breaded or breaded and marinated poultry. Although these items are processed further than the cut-up poultry the changes they undergo are still not so drastic as to change their substantial identity as poultry. Defendants argue that these commodities should be nonexempt, since they have been coated and infused with foreign substances. The court is aware that factors such as those have at times been used by the Commission to justify placing a nonexempt classification on a processed farm commodity. *See* Frozen Cooked Vegetables-Status, 81 I.C.C. 649 (1959) (french fried potatoes, and any other vegetable which has been cooked to the point of a material texture change or has undergone an infusion of foreign substances are not exempt).

█ Looking beyond the court's doubt as to the value of analogies between processed vegetables and processed poultry, the court notes that the Commission held as early as 1955 that breaded, uncooked, frozen fish was exempt and since then has expressed its opinion that a stew consisting of raw oysters or clams, milk, and seasoning, frozen but uncooked is also exempt. *See* 49 C.F.R. 1047.25. The changes that occur to this poultry when it is breaded or even marinated and breaded are no more drastic than the similar changes to the fish, oysters and clams in the cases of breaded fish and oyster stew. Thus, cut-up, uncooked, breaded and cut-up, uncooked, breaded and marinated poultry are agricultural commodities and exempt.

Because it is concluded that each of the poultry items in this case would be exempt if uncooked, and because Congress intended for cooked poultry to be exempt if it would be exempt if uncooked, the court holds that (1) cut-up, precooked or cooked, frozen or refrigerated poultry, (2) cut-up, precooked or cooked, breaded and/or battered, frozen or refrigerated poultry, and (3) cut-up, precooked or cooked, marinated, breaded and/or battered frozen or refrigerated poultry is exempt from economic regulation by the Interstate Commerce Commission under the provisions of Section 203(b) (6) of the Interstate Commerce Act, 49 U.S.C. § 303(b) (6).

Accordingly, the order of the Commission is enjoined from operation and set aside.

It is so ordered.

---

7. Actually, it seems that the Commission has allowed cut-up, frozen poultry to be transported as an exempt product for some time, although to the court's knowledge such poultry has never previously been administratively or judicially ruled exempt. On the other hand, deboned or ground patties and fillets appear to be manufactured products. The uncooked forms of poultry here thus rest on a midline between the two.