[No. B157910. Second Dist., Div. One. July 31, 2003.]

MARIA SERNA et al., Plaintiffs and Appellants, v.
PETTEY LEACH TRUCKING, INC., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Part II.

COUNSEL

Law Offices of Kumetz & Glick, Stephen Glick, Fred Kumetz and Jeffrey A. Levinson for Plaintiffs and Appellants.

Tharpe & Howell, Paul W. Burke and Shawn Elliot for Defendant and Appellant.

OPINION

**VOGEL (MIRIAM A.), J.**—In this wrongful death action against an interstate motor carrier, we hold that the carrier, having undertaken an activity which can be lawfully carried on only under a public franchise or authority and which involves possible danger to the public, is liable to the plaintiffs for harm caused by the negligence of the carrier's independent contractor—notwithstanding that the carrier's cargo was exempt from certain economic regulations.[1]

### BACKGROUND

#### A.

The Surface Transportation Board (formerly the Interstate Commerce Commission) and the Secretary of Transportation enforce the United States Government's transportation policy with regard to transportation by motor carrier (49 U.S.C. § 13101(a)(2)), and the Board has jurisdiction over the transportation of property by motor carrier between a place in one state and a place in another state. (49 U.S.C. § 13501(1)(A).) Although there are several exemptions from this jurisdiction (49 U.S.C. §§ 13502, 13503, 13504, 13505), and although there is a specific statutory exemption for the transportation by motor carrier of agricultural or horticultural commodities, including poultry (49 U.S.C. § 13506(a)(6)(B); *Gold Kist, Inc. v. United States* (N.D. Ga. 1971) 339 F.Supp. 1249, affd. *sub nom. Interstate Commerce Commission v. Gold Kist, Inc.* (1972) 409 U.S. 808 [34 L.Ed.2d 67, 93 S.Ct. 106]),[2] it is the cargo that is exempt, not the carrier, and the exempt nature of the commodity has no bearing on the application of financial responsibility and safety regulations adopted by the Surface Transportation Board. (49 C.F.R. § 390.5 [*"Exempt motor carrier* means a person engaged in transportation

---

[1] "The term 'motor carrier' means a person providing motor vehicle transportation for compensation." (49 U.S.C. § 13102(12).)

[2] "[T]he agricultural exemption ... was intended to aid farmers in getting low cost transportation to market for their commodities by relieving them of the burdens of economic regulation." (*Gold Kist, Inc. v. United States, supra,* 339 F.Supp. at p. 1252.)

exempt from economic regulation by the Federal Motor Carrier Safety Administration ... under 49 U.S.C. [§] 13506. 'Exempt motor carriers' are subject to the [Federal Motor Carrier] safety regulations"]; *Century Indem. Co. v. Carlson* (8th Cir. 1998) 133 F.3d 591, 600 [safety regulations govern trucks, and exemptions apply only to cargo]; *Royal Indem. Co. v. Jacobsen* (D.Utah 1994) 863 F.Supp. 1537, 1541–1542; *Braden v. Turner* (E.D. Tenn. 1968) 284 F.Supp. 379; *Dallum v. Farmers Co-operative Trucking Ass'n* (D.Minn. 1942) 46 F.Supp. 785, 787.)[3]

## B.

In November 1999, in Georgia, Harrison Poultry, Inc. asked Pettey Leach Trucking, Inc. (PLT) to arrange transportation to California for a load of frozen poultry. PLT agreed, and Harrison Poultry issued a bill of lading in which PLT was identified as the "carrier." PLT arranged for Sky Transportation, Inc. to pick up the poultry, which it did (the bill of lading was signed by a driver employed by Sky and driving a truck registered to Sky). When it reached California on December 2, the truck negligently collided with a motorcycle driven by Juan Manuel Serna, killing Serna. Serna's widow and children (collectively Serna) sued Sky and the truck driver (but not PLT) for wrongful death damages and settled that action for about $1 million (*Serna I*). Serna then filed this action (*Serna II*) against PLT, claiming PLT is vicariously liable for Sky's negligence.[4] PLT answered, alleging as an affirmative defense that it was acting as a broker, not a carrier.[5]

## C.

At PLT's request, the trial court tried PLT's affirmative defense first and without a jury. At the conclusion of Serna's evidence, PLT moved for nonsuit and the motion was granted, the trial court finding (as Serna claimed) that PLT was acting as a carrier, not as a broker, and finding on undisputed

---

[3] The Surface Transportation Board's safety regulations address reporting requirements (49 C.F.R. § 390.19), vehicle markings (49 C.F.R. § 390.21), record keeping (49 C.F.R. §§ 390.29–390.35), driver qualifications (49 C.F.R. § 391.1 et seq.), driving regulations (49 C.F.R. § 392.1 et seq.), required parts and equipment (49 C.F.R. § 393 et seq.), hours of service of drivers (49 C.F.R. § 395.1 et seq.), inspection, repair and maintenance (49 C.F.R. § 396.1 et seq.), and more.

[4] According to Serna, PLT acted as a motor carrier pursuant to a grant of public authority, and Sky was its subhauler or subcontractor; hence, claims Serna, PLT is vicariously liable for Sky's negligence.

[5] PLT claims it was acting as a transportation broker for a load of poultry, not as a carrier, and thus was not vicariously liable for the actual carrier's negligence. Alternatively, PLT claims that if it was acting as a carrier, it nevertheless was not vicariously liable for Sky's negligence because Sky was an independent contractor.

evidence (as PLT claimed) that Sky was an independent contractor, but then concluding as a matter of law that PLT was not vicariously liable for Sky's negligence.

The court reasoned thus: The truck involved in this accident was (by stipulation) a commercial motor vehicle within the meaning of the National Traffic and Motor Vehicle Safety Act (49 U.S.C. §§ 31101; see also *id.*, § 13102(12); 49 C.F.R. § 390.5 (2003)) and ordinarily would have been subject to the Surface Transportation Board's registration and permit requirements (49 U.S.C. §§ 13101–16106). But because this truck was transporting frozen poultry, it was exempt from the Act's registration and permit requirements (49 U.S.C. § 13506(a)(6)(B); *Gold Kist, Inc. v. United States, supra,* 339 F.Supp. 1249) and, therefore, not (at the time of the accident) " 'carrying on an activity which can be lawfully carried on only under a franchise granted by public authority' " within the meaning of *Eli v. Murphy* (1952) 39 Cal.2d 598, 599, fn.* [248 P.2d 756], and *Gamboa v. Conti Trucking, Inc.* (1993) 19 Cal.App.4th 663, 666, fn. 3 [23 Cal.Rptr.2d 564]. Hence, said the trial court, PLT is not liable for the negligence of Sky, an independent contractor. (*Millsap v. Federal Express Corp.* (1991) 227 Cal.App.3d 425, 433–435 [277 Cal.Rptr. 807]; *Fonseca v. County of Orange* (1972) 28 Cal.App.3d 361, 365 [104 Cal.Rptr. 566].)[6]

Judgment was entered in favor of PLT. Serna appeals, and PLT has filed a protective cross-appeal.

### DISCUSSION

### I.

The essence of Serna's primary claim is that "exempt" and "unregulated" are not synonymous, that the frozen poultry exemption does not leave PLT unregulated by a statutory scheme enacted for the protection of the public, and that PLT was at the time of the accident carrying on an activity (1) which could be lawfully conducted only under a public franchise or authority and (2) which involved an unreasonable risk of harm to others. It follows,

---

[6] The rule articulated in *Eli* and *Gamboa* comes from section 428 of the Restatement of Torts (and the rule is the same in the Restatement Second of Torts): "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." *Millsap v. Federal Express Corp., supra,* 227 Cal.App.3d at pages 433–435, holds that a company that is "not regulated" by the Interstate Commerce Commission is not vicariously liable for the negligent driving of its independent contractor.

according to Serna, that PLT is vicariously liable for the torts of Sky, its independent contractor. We agree, and therefore do not reach Serna's other claims of error.

## A.

### *Taylor v. Oakland Scavenger Co.*

The seminal California case is *Taylor v. Oakland Scavenger Co.* (1941) 17 Cal.2d 594 [110 P.2d 1044]. In *Taylor,* a garbage truck struck a high school student on the school's premises. The student sued the truck's driver, the truck's owner, the school district, and Oakland Scavenger Company, a garbage collector working under a contract with the City of Oakland. On Oakland Scavenger's appeal following a verdict in favor of the plaintiff, Oakland Scavenger claimed it was not liable for the driver's negligence because the truck's owner was an independent contractor over whom Oakland Scavenger exercised little supervision or control. (*Id.* at p. 603.) The Supreme Court disagreed:

"An employer is generally liable for negligent acts of an employee performed within the scope of employment, but if an independent contractor rather than master and servant relationship exists, the independent contractor usually is alone liable for his negligent acts. *If, however, an individual or corporation undertakes to carry on an activity involving possible danger to the public under a license or franchise granted by public authority subject to certain obligations or liabilities imposed by the public authority, these liabilities may not be evaded by delegating performance to an independent contractor. The original contractor remains subject to liability for harm caused by the negligence of the independent contractor employed to do the work.*" (*Taylor v. Oakland Scavenger Co., supra,* 17 Cal.2d at p. 604, italics added.)

### *Gaskill v. Calaveras Cement Co.*

In *Gaskill v. Calaveras Cement Co.* (1951) 102 Cal.App.2d 120 [226 P.2d 633], the Court of Appeal refused to apply the rule announced in *Taylor* to a defendant who was not operating under a franchise. According to *Gaskill,* the *Taylor* rule "is principally applicable to public service corporations, which, as such, are permitted by their *franchises* to use instrumentalities which are *peculiarly dangerous unless carefully operated,* and ... the rule ... does not apply to the carrying on of activities which involve no special danger and which can be lawfully carried on by private persons without liability for the misconduct of the contractors to whom they are entrusted." (*Id.* at p. 125.)

*Eli v. Murphy*

The rule articulated in *Taylor* was reaffirmed by the Supreme Court in *Eli v. Murphy, supra,* 39 Cal.2d 598.[7] In *Eli,* the plaintiffs were injured when their car was struck by a tractor and semitrailer driven and owned by the Murphys and used to transport freight under a contract between the Murphys and C.M.T., a highway common carrier licensed by the California Public Utilities Commission (PUC). (*Id.* at p. 598.) On C.M.T.'s appeal following a verdict in favor of the plaintiffs, the Supreme Court agreed with the plaintiffs that "under both the common law and certain regulations of the [PUC], C.M.T., as a highway common carrier, could not delegate its duties to an independent contractor so as to escape liability for their negligent performance." (*Id.* at p. 599.)

"The common law principle upon which plaintiffs rely has been enunciated in section 428 of the Restatement of Torts,[] and has frequently been applied to impose liability upon franchised common carriers who have engaged independent contractors to transport goods over the public highways. [Citations.] We have concluded that it is applicable here. [¶] C.M.T., operating as a highway common carrier, is engaged in a 'business attended with very considerable risk' [citations], and the Legislature has subjected it and similar carriers to the full regulatory power of the [PUC] to protect the safety of the general public. [Citations.] *The effectiveness of safety regulations is necessarily impaired if a carrier conducts its business by engaging independent contractors over whom it exercises no control. If by the same device it could escape liability for the negligent conduct of its contractors, not only would the incentive for careful supervision of its business be reduced, but members of the public who are injured would be deprived of the financial responsibility of those who had been granted the privilege of conducting their business over the public highways. Accordingly, both to protect the public from financially irresponsible contractors, and to strengthen safety regulations, it is necessary to treat the carrier's duties as nondelegable.* [Citations. ] [¶]...

"The Legislature has ... classified highway common carriers such as C.M.T. apart from others, and by so doing has indicated special concern with the safety of their operations. ... [¶] ... [¶] In view of the more extensive and regular operations of highway common carriers as compared with others, the Legislature could reasonably conclude that the safety of their operations is of

---

[7] Although *Eli v. Murphy* and many of the later cases arise in the context of vehicles regulated by the California Public Utilities Commission (whose safety functions have since been transferred to the California Highway Patrol and the Department of Motor Vehicles), our California courts have applied the same rules to vehicles operating in interstate commerce. (*Lehman v. Robertson Truck-A-Way* (1953) 122 Cal.App.2d 82, 85–86 [264 P.2d 653]; Stats. 1996, ch. 1042.)

special importance and legislate accordingly. Highway common carriers may not, therefore, insulate themselves from liability for negligence occurring in the conduct of their business by engaging independent contractors to transport freight for them." (*Eli v. Murphy, supra,* 39 Cal.2d at pp. 599–601, fn. omitted.)[8]

### *Snyder v. Southern Cal. Edison Co.*

In *Snyder v. Southern Cal. Edison Co.* (1955) 44 Cal.2d 793 [285 P.2d 912], the Supreme Court quoted at length from *Eli v. Murphy, supra,* 39 Cal.2d 598, then expanded the nondelegable duty rule this way:

"The rule of nondelegable duty has been applied to the maintenance of premises by a landlord through an independent contractor with respect to his tenants or their employees [citations]; to the owner of an amusement concession operated by an independent contractor when a patron was injured [citations]; [and] to the owner of property who, through an independent contractor, so repaired part of the premises as to cause damage to the one occupying the floor below [citation]. *Where an activity involving possible danger to the public is carried on under public franchise or authority[,] the one engaging in the activity may not delegate to an independent contractor the duties or liabilities imposed on him by the public authority* [citations] and generally speaking there are many situations in which the person cannot absolve himself from liability by delegating his duties to an independent contractor. [Citations.]" (*Snyder v. Southern Cal. Edison Co., supra,* 44 Cal.2d at pp. 798–799, italics and underscoring added.)[9]

---

[8] In *Gilbert v. Rogers* (1953) 117 Cal.App.2d 712 [256 P.2d 574], the same court that decided *Gaskill* noted that *Eli* had distinguished *Gaskill* on the ground that the independent contractor in *Gaskill* operated under a permit rather than a franchise; hence, the nondelegable duty principle announced in *Eli* did not apply to the facts of *Gaskill*. (*Gilbert v. Rogers, supra,* 117 Cal.App.2d at pp. 715–716.) The Court of Appeal disputed the Supreme Court's distinction, suggesting there was no difference between a permit and a franchise, and that the Legislature had expressed the same concerns about all highway carriers, not just common carriers—but nevertheless followed *Eli* and held that the carrier in *Gilbert* had "successfully insulated itself through the medium of an independent contractor" because both the carrier and the subhauler operated pursuant to permits, not franchises. (*Gilbert v. Rogers, supra,* 117 Cal.App.2d at pp. 715–717.) As will appear, the Supreme Court later enlarged the concept of "franchise."

[9] In *Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508], overruled on other grounds by *Privette v. Superior Court* (1993) 5 Cal.4th 689, 696–702 [21 Cal.Rptr.2d 72, 854 P.2d 721], the plaintiff (an employee of a company working under contract with the City of Los Angeles) was injured while painting traffic lines on the City's streets. In deciding that the City was liable for the negligence of its independent contractor (the plaintiff's employer), the Supreme Court noted that the "the exceptions to the general rule of nonliability [for the negligence of an independent contractor had] continued to... expand[].... '... "Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog

### Klein v. Leatherman

In *Klein v. Leatherman* (1969) 270 Cal.App.2d 792 [76 Cal.Rptr. 190], where the subhauler's permit had been revoked and he was operating without the required public liability insurance, the Court of Appeal noted that *Snyder v. Southern Cal. Edison Co., supra,* 44 Cal.2d at page 799, spoke in terms of an activity carried on under a public "franchise or *authority."* *(Klein v. Leatherman, supra,* 270 Cal.App.2d at p. 795, italics added.) The Court of Appeal then held that, in "consonance with the trend of such decisions, the facts and public policy involved in this case require us to hold that the duties of care of [the defendant Leatherman, as a] common carrier [operating with a permit] and as a contract carrier [citation] were nondelegable; and that he is chargeable with the negligence of [his subhauler] and its driver .... At the time of [the plaintiff's] injury ..., [the subhauler] had forfeited its legal permission to operate on the highways. Therefore, its performance can only be legalized by inferring [the subhauler] was an agent of Leatherman, operating under his permit. [Citations.] A highway contract carrier engaging another as a subhauler thus is under a practical compulsion to verify that the subhauler possesses an unrevoked permit and the required insurance coverage. This is in the public interest, as well as his own." *(Id.* at p. 796.) A petition for review was denied by the Supreme Court. *(Id.* at p. 797.)

### Millsap v. Federal Express Corp.

The plaintiff in *Millsap v. Federal Express Corp., supra,* 227 Cal.App.3d 425, was injured when her car was struck by a car driven by Christopher Pence. At the time of the accident, Pence worked for NCE as an independent contractor and was delivering a package that had been flown to California by Federal Express. Millsap sued Pence, NCE, and Federal Express "on the theory that Pence was an employee of NCE acting in the course and scope of his employment at the time of the accident, and that [Federal Express] had contracted with NCE for the work done by Pence.... " *(Id.* at p. 428.) NCE

---

of its exceptions." ' " *(Id.* at p. 252.) In *Maloney v. Rath* (1968) 69 Cal.2d 442 [71 Cal.Rptr. 897, 445 P.2d 513], the Supreme Court considered a two-car collision caused by the defendant's defective brakes; the defendant said it wasn't her fault because she had just had the brakes overhauled by a qualified independent contractor. The Supreme Court disagreed, explaining that "a nondelegable duty operates, not as a substitute for liability based on negligence, but to assure that when a negligently caused harm occurs, the injured party will be compensated by the person whose activity caused the harm and who may therefore properly be held liable for the negligence of his agent, whether his agent was an employee or an independent contractor. To the extent that recognition of nondelegable duties tends to insure that there will be a financially responsible defendant available to compensate for the negligent harms caused by that defendant's activity, it ameliorates the need for strict liability to secure compensation." *(Id.* at p. 446.)

and Federal Express prevailed on motions for summary judgment, and NCE's judgment was affirmed on appeal. After holding that Pence was in fact NCE's independent contractor, the Court of Appeal explained the rules this way:

"It has been held that the general rule of nonliability of an employer of an independent contractor for the contractor's negligence 'is subject to exceptions of such magnitude as to leave only a small area in which the general rule operates.' [Citations.] [¶] ... [¶] [Millsap contends] liability resulting from Pence's delivery of packages is nondelegable because the operation is regulated by a public agency. The basis for this argument is found in section 428 of the Restatement Second of Torts: 'An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.'

"This rule ordinarily applies where a public service corporation attempts to delegate its duty to an independent contractor. [Citation.] *The rule has, however, also been held to apply if an employer is subject to regulations enacted for the protection of the public.* 'An employer is generally liable for negligent acts of an employee performed within the scope of employment, but if an independent contractor rather than master and servant relationship exists, the independent contractor usually is alone liable for his negligent acts. If, however, an individual or corporation undertakes to carry on an activity involving possible danger to the public *under a license or franchise granted by public authority subject to certain obligations or liabilities imposed by the public authority*, these liabilities may not be evaded by delegating performance to an independent contractor. The original contractor remains subject to liability for harm caused by the negligence of the independent contractor employed to do the work.' [Citation.]

"In *Eli v. Murphy*[, *supra*,] 39 Cal.2d 598, 248 P.2d 756 ..., for example, the activity at issue was the operation of a tractor and semitrailer; an activity which (1) is attended with very considerable risk [citation], and (2) is highly regulated in order to protect the public safety. [Citation.] The court in that case found that the effectiveness of those regulations would be impaired if the carrier could circumvent them by having the regulated operations conducted by an independent contractor. It followed that 'Highway common carriers may not, therefore, insulate themselves from liability for negligence occurring in the conduct of their business by engaging independent contractors to transport freight for them.' [Citation.]

"Millsap introduced evidence that [Federal Express] carried a certificate from the Interstate Commerce Commission and, accordingly, was required by

that agency to carry liability insurance. [Citation.] From this she argues that [Federal Express] must be held responsible for any negligence attributable to NCE. [Federal Express], however, is not a party to this appeal.

"The pivotal issue is *whether NCE's operations were 'subject to certain obligations or liabilities imposed by the public authority' such that NCE must be held responsible for the negligence of an independent contractor to whom it delegated those duties.* The relevant statutes, and the record, indicate that it should not be held so responsible. Thus, 49 United States Code section 10526, provides: '(a) The Interstate Commerce Commission does not have jurisdiction under this subchapter over— ... [¶] (8)(B) transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier....' ... That NCE was *not regulated* makes inapplicable the rule stated in section 428 of the Restatement Second of Torts and in *Eli v. Murphy* and related cases." (*Millsap v. Federal Express Corp., supra,* 227 Cal.App.3d at pp. 433–435, italics added.)

### Gamboa v. Conti Trucking, Inc.

In *Gamboa v. Conti Trucking, Inc., supra,* 19 Cal.App.4th 663, a wrongful death action, Roberto Gamboa was killed when his bicycle was struck by a tractor-trailer owned by Alberg Trucking and driven by Demele, its employee. At the time of the accident, Alberg Trucking (an independent contractor) was subhauling freight for Conti Trucking. Both Alberg and Conti were licensed by the PUC as highway carriers, and Conti had verified that Alberg had the appropriate amount of liability insurance. The trial court granted Conti Trucking's motion for summary judgment, and the plaintiffs appealed. The Court of Appeal reversed:

"Conti Trucking contends that to the extent of any nondelegable duty imposed by *Eli v. Murphy,* Conti Trucking's vicarious liability was extinguished pursuant to *Klein v. Leatherman* .... [¶] ... [¶] ... Conti Trucking contends that if the primary carrier meets its obligation to ensure that the independent contractor carrier is licensed to haul freight on California highways and has the required amount of liability insurance, it has satisfied its nondelegable duty under *Eli v. Murphy* and any vicarious liability is extinguished.

"... *The holding of Klein v. Leatherman ... is an expansion of the nondelegable duty doctrine.* The Court of Appeal recognized that one truck on the highway tends to be like any other and '[i]t is difficult to discern wherein classification of the operation on the highway as a privilege under

franchise, or as a right under a permit, changes the degree of protection required.' [Citation.] *Klein v. Leatherman appears to be the first and only reported opinion in California applying the rule of* **section 428 of the Restatement of Torts** *to a nonfranchised highway contract carrier.*

"... [*Klein v. Leatherman*] states that the '... *monetary liability* under the nondelegable duty *may* be eliminated, or diminished, pro tanto.' [Citation.] This, of course, would follow since any amount a plaintiff may recover from a vicariously liable highway common carrier would be reduced by any payment made by or on behalf of the primary tortfeasor and eliminated completely if the insurance coverage is sufficient to cover the damages sustained. Any amount paid by one joint tortfeasor operates to reduce pro tanto the amount of damages that a plaintiff may recover against other joint tortfeasors. [Citations.] However, the nondelegable duty of care would not be affected." (*Gamboa v. Conti Trucking, Inc., supra,* 19 Cal.App.4th at pp. 666–668, italics and boldface added.)

### B.

 Hence, the rule is that a carrier who undertakes an activity (1) which can be lawfully carried on only under a public franchise or authority and (2) which involves possible danger to the public is liable to a third person for harm caused by the negligence of the carrier's independent contractor. (*Taylor v. Oakland Scavenger Co., supra,* 17 Cal.2d at p. 604; *Eli v. Murphy, supra,* 39 Cal.2d at pp. 599–601; *Snyder v. Southern Cal. Edison Co., supra,* 44 Cal.2d at pp. 798–799.) Were the rule otherwise, a carrier could escape liability for the negligence of its independent contractors, thus reducing the incentive for careful supervision and depriving those who are injured of the financial responsibility of those to whom the privilege was granted. For these reasons, the carrier's duties are nondelegable, and it is only when the carrier is "not regulated" at all that the rule is otherwise. (*Eli v. Murphy, supra,* 39 Cal.2d at p. 600; *Millsap v. Federal Express Corp., supra,* 227 Cal.App.3d at pp. 434–435; *Klein v. Leatherman, supra,* 270 Cal.App.2d at pp. 794–796; *Gamboa v. Conti Trucking, Inc., supra,* 19 Cal.App.4th at pp. 666–668.)

### C.

The poultry exemption does not mean PLT was "not regulated," or that it was not subject to the authority of the Surface Transportation Board.

 As explained at the outset, the exemption for the transportation of agricultural or horticultural commodities, including poultry (49 U.S.C. § 13506(a)(6)(B); *Gold Kist, Inc. v. United States, supra,* 339 F.Supp. 1249), exempts the cargo, not the carrier, and the exempt nature of the commodity

has no bearing on the application of financial responsibility and safety regulations adopted by the Surface Transportation Board. (49 C.F.R. § 390.5 ["*Exempt motor carrier* means a person engaged in transportation exempt from economic regulation by the Federal Motor Carrier Safety Administration ... under 49 U.S.C. § 13506. 'Exempt motor carriers' are subject to the [Federal Motor Carrier] safety regulations"]; *Century Indem. Co. v. Carlson, supra,* 133 F.3d at p. 600; *Royal Indem. Co. v. Jacobsen, supra,* 863 F.Supp. at pp. 1541–1542.) Since PLT was bound by the Board's safety and financial regulations (49 C.F.R. §§ 390.5, 390.19, 390.21, 390.29–390.35, 391.1–396.1 et seq.), the trial court was mistaken when it held that PLT was "not regulated" and that the facts of this case are the same as those before the court in *Millsap v. Federal Express Corp., supra,* 227 Cal.App.3d 425.

*Millsap* does not mention the Interstate Commerce Commission's safety regulations, and the opinion cites the applicable federal exemption (49 U.S.C § 10526(a)(8)(B)) only to show that the California PUC, in response to NCE's inquiry about the PUC's insurance requirements, concluded that NCE was covered by " 'the air freight motor carrier exemption and, therefore, [was] not required to have authority either from the [PUC] or the Interstate Commerce Commission.' " (*Millsap v. Federal Express Corp., supra,* 227 Cal.App.3d at pp. 434–435.) From that fact (and without any consideration of the Interstate Commerce Commission's safety regulations), *Millsap* concluded that "NCE was not regulated" and not subject to the nondelegable duty rules. Hence, *Millsap* holds only that a wholly unregulated carrier (rather than an "exempt carrier") is not vicariously liable for the negligence of its independent contractor. (*Id.* at p. 435; and see *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613] ["It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and the issues before the court. An opinion is not authority for propositions not considered."].)

It follows that, contrary to PLT's assertion, Serna has shown that PLT was carrying on an activity which involved an unreasonable risk of harm to others, a fact that is not and could not be disputed (*Klein v. Leatherman, supra,* 270 Cal.App.2d at p. 795), and which could lawfully be carried on only under a public franchise or authority.[10] PLT's discussion about the narrow meaning of "franchise" ignores the fact that the rule has been extended to cover more than is implied by that narrow term (*Snyder v. Southern Cal. Edison Co., supra,* 44 Cal.2d at p. 799 ["under public franchise or authority"], and PLT's suggestion that it "could lawfully engage in the transportation of the frozen chickens" without regulation by the Surface Transportation Board is just plain wrong. (49 C.F.R. § 390.5 (2003) [exempt

---

[10] The Sky truck was a tractor and semitrailer weighing more than 10,001 pounds, and thus was a "commercial motor vehicle" within the meaning of 49 C.F.R. § 390.5 (2003).

motor carriers are subject to safety regulations]; and see 49 C.F.R. § 395.8(e) (2003) [falsifying or failing to maintain required driver's logs of hours of services is a crime]; *United States v. Handfinger* (3d Cir. 1966) 364 F.2d 800.)[11]

## II.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with directions to set the action back on track for trial. Plaintiffs are awarded their costs of appeal.

Spencer, P. J., and Mallano, J., concurred.

The petition of appellant, Pettey Leach Trucking, Inc., for review by the Supreme Court was denied November 19, 2003.

---

[11] We summarily reject PLT's alternative contention that it was acting as a "broker," not a carrier. ██ Assuming it would make a difference, the argument fails because the trial court found, on disputed evidence (Harrison's bill of lading, as well as 32 other bills of lading issued in the two weeks preceding the shipment in question, showed PLT as the carrier, and PLT was a licensed carrier), that PLT was *not* acting as a broker; that finding is supported by substantial evidence, and is binding on this appeal, notwithstanding that the legal result of the court's factual findings is an issue of law. (*Bancroft-Whitney Co. v. McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157]; *Maslow v. Maslow* (1953) 117 Cal.App.2d 237, 243 [255 P.2d 65], abrogated on other grounds by *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 287–291 [137 Cal.Rptr. 635, 562 P.2d 316]; *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15–16 [68 Cal.Rptr.2d 837].)

[*]See footnote, *ante*, page 1475.