56 So.2d 359

**THOMPSON v. CURRY.**

4 Div. 193.

Court of Appeals of Alabama.

Nov. 27, 1951.

Rehearing Denied Dec. 18, 1951.

Lewis & Lewis, C. R. Lewis and P. S. Lewis, all of Dothan, for appellant.

L. A. Farmer, Dothan, for appellee.

## CARR, Presiding Judge.

This is a suit for damages occasioned by a collision between an automobile owned and driven by the plaintiff, Herman Curry, and an automobile owned by the defendant, Mrs. John A. Thompson and driven at the time by Reuben A. Thomas.

In the court below there was a verdict and judgment in favor of the plaintiff.

A question of critical concern is whether or not, under the evidence in the case, the doctrine of respondeat superior has application.

This aspect of our review is presented in brief of appellant's attorney on the insistence that the court below erred in not granting the motion for a new trial. Counsel does not argue that the defendant was due the general affirmative charge.

These facts appear in the evidence without conflict:

Reuben Thomas was a part-time employee of the appellant. His duties in the main consisted of working around appellant's home. He acted on some occasions as her chauffeur and at times attended to business matters for her. Thomas also worked at night for the Southern Liquid Gas Company.

For about five years Mrs. Thompson had permitted Thomas to use one of her automobiles. This permission included the privilege of taking the car after working hours in the afternoon and returning with it the next morning. It appears, with appellant's consent, Thomas used the automobile in going to and from his work at the gas company.

Mr. Mitchell with his wife and two small children lived in a house or apartment located about forty feet back of Mrs. Thompson's home.

On the day in question, while Thomas was working in appellant's yard, Mrs. Mitchell engaged him to bring his daughter to her home that night to baby sit. Thomas got off from work at about 3 o'clock P.M. and at about 5:30 o'clock the same afternoon he brought his daughter to Mrs. Mitchell's home. At about 10 o'clock that night he returned for the purpose of carrying his daughter back to his home. On the latter trip and some distance from Mrs. Mitchell's home, he collided with appellee's car.

On each of the indicated journeys Thomas was driving appellant's automobile.

Mrs. Thompson testified that she knew nothing about the arrangement for and conveyance of the baby sitter, and she had no part in the planning therefor. Her evidence in this aspect was corroborated by Mr. and Mrs. Mitchell and Thomas.

We will first determine whether or not on the basis of the above delineated evidence the appellant was legally accountable for the negligence of the driver of her automobile at the time of the collision in question.

■ The proof of the ownership of the vehicle in the defendant raised a presumption that it was being operated by her agent and that he was acting within the scope of his employment at the time.

This is only an administrative presumption. If the evidence clearly and without conflict shows the vehicle was not being so operated, and the circumstances do not afford nor establish a reasonable inference to the contrary, the presumption no longer prevails. Perfection Mattress & Spring Co. v. Windham, 236 Ala. 239, 182 So. 6; Baxter v. Wilson, 35 Ala.App. 196, 45 So.2d 474.

■ "The doctrine of respondeat superior applies only when the relation of master and servant 'is shown to exist between the wrongdoer and the person sought to be charged for the result of some wrong or neglect, *at the time and in respect to the very transaction out of which the injury*

*arose.'*" (Emphasis ours.) Powers v. Williamson, 189 Ala. 600, 66 So. 585, 587.

The effect of the evidence we have delineated is that Mrs. Thompson had given the permissive use of her car to Thomas, but she had no knowledge of or part in the use to which it was committed at the time of the accident. The purpose of the journey was in no manner connected with any business or interests of hers.

The authorities in our jurisdiction follow the doctrine that permissive use *alone* does not furnish any basis for liability against the owner of the vehicle. Tullis v. Blue, 216 Ala. 577, 114 So. 185; Parker v. Wilson, 179 Ala. 361, 60 So. 150, 43 L. R.A.,N.S., 87; Karrh v. Brown, 35 Ala. App. 308, 46 So.2d 430; Armstrong v. Sellers, 182 Ala. 582, 62 So. 28; Bradley v. Ashworth, 211 Ala. 395, 100 So. 663; Mc-Cormack Bros. Motor Car Co. v. Holland, 218 Ala. 200, 118 So. 387; United Wholesale Gro. Co. v. Minge Floral Co., 25 Ala. App. 153, 142 So. 586.

In the case of McCormack Bros. Motor Car Co. v. Holland, supra, the employee of the defendant had permission to use his employer's automobile at any time and was exercising the privilege at the time of the collision. The accident occurred in the forenoon within the period of the employee's working hours, but at the time he was on his way to his residence for the purpose of bringing his wife to town. In response to the review the Supreme Court held that the prima facie case made by proof of the ownership of the automobile was rebutted by the indicated evidence.

In the case of United Wholesale Gro. Co. v. Minge Floral Co., supra, the defendant's salesman was permitted to use the employer's automobile after working hours and "for whatever purpose he saw fit and for his own personal pleasure and convenience. In other words, the custody and control of defendant's automobile was at all times in Killion as the agent for defendant. During business hours the automobile was to be used in the business of defendant, after which it was kept and used by Killion, with the consent of defendant."

At the time of the collision the salesman had completed his day's work and was on his way home. He went out of the direct route to stop by his aunt's to get his wife. This court held that under these circumstances the defendant was entitled to the general affirmative charge.

Extensive annotations of the authorities which have reviewed the question of instant concern are found in: 22 A.L.R. 1397–1438; 45 A.L.R. 477–498; 68 A.L.R. 1051–1061; 80 A.L.R. 725–735; 122 A.L.R. 858–893. See also, 60 C.J.S., Motor Vehicles, § 437(c), p. 1098; 5 Am.Jur., Automobiles, Sec. 375, p. 712.

In the case at bar, on the basis of the evidence we have herein above outlined, it seems clear that the appellee was without right to recover against the appellant for damages resulting from the collision of concern.

We are confronted, however, with some evidence to this effect:

The morning after the collision the appellee called at the home of the appellant and there had a conversation with the latter. We quote the pertinent part from appellee's testimony:

Direct examination:

"Q. Mr. Curry, state to the jury what Mrs. Thompson told you about whose car that was and who was driving it and what he was doing with the car. A. It was her car, Mrs. Thompson's car, and she had Reuben carrying a baby sitter home after some other party had been off visiting, I don't know where they had been, but this colored girl was baby sitting for this couple and she got Reuben to carry this baby sitter home at about ten-thirty that night.

"Q. Mrs. Thompson told you it was her car and she got Reuben Thomas to carry this baby sitter home that night? A. Yes, sir."

Cross-examination (we omit objections of attorneys and rulings of the court):

"Q. When was this conversation that you say you had with Mrs. Thompson, the day after the accident, what time of day was it? A. It was the next morning about ten o'clock I would say.

"Q. About ten o'clock? A. Yes, sir.

"Q. And your brother was with you you say? A. Yes, sir.

"Q. And he is now dead? A. Yes, sir.

"Q. Mrs. Thompson was there and you say nobody else was there?

"Mr. Lewis: He has stated that Mrs. Thompson said that this Reuben was carrying a baby sitter home, and my recollection is that he testified here under oath that she said she sent him home with the baby sitter. Is that right?

"Witness: Yes, sir.

"Q. Nobody else was present then you say? A. My brother was present at that time.

"Q. You and your brother and Mrs. Thompson? A. Yes, sir.

"Q. As a matter of fact, didn't you go out there and try and get her to pay you for the damage to your automobile, and she told you that she had employed a lawyer and he said she was not liable?

"Q. —And that the negro was not at fault? Isn't that what happened?

"Q. Isn't that what happened, Mr. Curry? A. She said that she had sent the baby home, the baby sitter home."

The appellant denied in her testimony that she stated to the appellee that "she got Reuben Thomas to carry this baby sitter home that night."

As we have observed above, Mrs. Mitchell and Thomas both testified that Mrs. Thompson had no knowledge of the arrangement relating to the baby sitter and did not direct Thomas to carry the girl home. Mr. Mitchell testified that Mrs. Thompson was not present when Thomas came for his daughter and that witness did not "communicate any information to Mrs. Thompson with reference to getting the baby sitter or transporting the baby sitter."

We are here confronted with the task of determining whether or not the motion for a new trial should have been granted because the verdict was against the great weight of the evidence. This review must be related and directed to the aspect of the evidence quoted above.

It must be conceded that this scant evidence is lacking in certainty and import.

It is reasonable to assume that the appellant had been apprised of the circumstances relating to Thomas' mission and the use of her car prior to the quoted conversation with the appellee. Her apparently casual reference concerning the nature of the trip and her connection therewith could have been misunderstood by the appellee.

We see no reason or cause for appellant's active participation in the plans for the return of the baby sitter. The Mitchells lived in a home separate and apart from that of Mrs. Thompson. After three o'clock that afternoon Thomas was not on duty as an employee of the appellant. He brought his daughter to the Mitchells' home at about 5:30 o'clock. Unquestionably he contemplated returning at an agreed time for her. The entire plan and agreement relating to the baby sitter was wholly disassociated from any active concern or business interest of the appellant.

We are clear to the conclusion and feel impelled to hold that the evidence is so overwhelmingly against the verdict of the jury that it would be unjust and wrong to let it stand. Koonce v. Craft, 234 Ala. 278, 174 So. 478.

The conclusion we have reached renders it unnecessary for us to respond to the other questions which are presented for our review.

It is ordered that the judgment below be reversed and the cause remanded.

Reversed and remanded.