896 A.2d 489 (2006)
385 N.J. Super. 142
Oksun KIM, Plaintiff-Respondent,
v.
PACCAR FINANCIAL CORP., Paccar Leasing Co., and Paccar, Inc., Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 2006.
Decided April 19, 2006.
*490 Joseph A. Deer argued the cause for appellants (Bashwiner and Deer, attorneys; Mr. Deer, on the brief).
Gregory R. Preston argued the cause for respondent (Preston & Wilkins, attorneys; Mr. Preston and Joseph Deliso, on the brief).
Before Judges FALL, PARKER and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal we review a choice-of-law ruling in an action for personal injury damages resulting from a New Jersey automobile accident that involved New Jersey and New York residentsa variation on the choice-of-law problem encountered in Fu v. Fu, 160 N.J. 108, 733 A.2d 1133 (1999). Guided by Fu, we conclude that, under these circumstances, the trial judge erred in declaring that New York law governs plaintiff's claim.
On August 9, 2002, plaintiff Oksun Kim, a New Jersey resident, was a passenger in a vehicle owned and operated by Ok J. Hwang, another New Jersey resident. The Hwang vehicle was struck by a truck operated by Timothy Harvey (Harvey), a New York resident, on a New Jersey highway. Defendant Paccar Financial Corp., a Washington corporation with its principal place of business in Washington, is the owner of the truck. On November 18, 1999, R & L Smith Trucking Inc. (R & L) leased the truck from Paccar for a five-year period. This lease transaction occurred in New York and called for the truck to be registered in New York.
Plaintiff commenced this action on August 9, 2004.[1] Her complaint demanded damages from Paccar Financial Corp., Paccar, Inc., and Paccar Leasing Co., alleging that one or more of these Paccar defendants was the owner of the truck leased by R & L and driven by Harvey.
The Paccar defendants moved for summary judgment, acknowledging that Paccar Financial Corp. was the owner of the truck driven by Harvey on the date in question, and also that Paccar Financial Corp. leased the vehicle to R & L nearly three years earlier. Plaintiff cross-moved for summary judgment, seeking a declaration thatas the truck's ownerPaccar Financial Corp. should be held liable for plaintiff's damages in accordance with New York Vehicle and Traffic Law § 388 (hereafter Section 388). After hearing argument, the trial judge denied Paccar *491 Financial Corp.'s motion for summary judgment,[2] and granted plaintiff's cross-motion for summary judgment, holding that Section 388 should apply instead of New Jersey's contrary common law rule. We granted leave to appeal.
Because New Jersey is the forum state, its choice-of-law rules apply. Gantes v. Kason Corp., 145 N.J. 478, 484, 679 A.2d 106 (1996). In applying those rules, we initially observe that there is a true conflict between the laws of New Jersey and New York in this regard. New Jersey common law shields a vehicle owner such as Paccar Financial Corp. (Paccar) from vicarious liability in the absence of an agency or employment relationship. Fu v. Fu, supra, 160 N.J. at 118, 733 A.2d 1133. On the other hand, Section 388 imposes vicarious liability on such a vehicle owner, stating:
Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, expressed or implied, of such owner.
As the Court said in Fu, "the two states' laws governing the issue to be resolved in this casewhether an automobile owner is vicariously liable for negligent permissive use of that owner's vehicleare fundamentally different." 160 N.J. at 118, 733 A.2d 1133. The resolution of the choice-of-law problem thus posed is dispositive of plaintiff's suit against Paccar because there is no doubt that Paccar cannot be held liable for plaintiff's injuries should New Jersey's substantive law be applied.
In applying New Jersey's choice-of-law rules to this dispute, we recognize that the traditional lex loci delicti rule, which mechanically applied the law of the place of the wrong, Veazey v. Doremus, 103 N.J. 244, 247, 510 A.2d 1187 (1986), has been jettisoned and replaced by "a more flexible `governmental-interest' test that seeks to apply the law of the state with the greatest interest in governing the specific issue in the underlying litigation." Fu, supra, 160 N.J. at 118, 733 A.2d 1133. That test requires an examination and comparison of the policies which underlie the substantive laws of New York and New Jersey in question.
Our Supreme Court described the public policies which generated the enactment of Section 388 in the following way:
New York has a well-articulated, two-fold policy underlying Section 388. First, the statute was designed to "ensure access by injured persons to a financially responsible insured person against whom to recover for injuries." Section 388 achieves that compensatory purpose by "remov[ing] the hardship which the common-law rule visited upon innocent persons by preventing an owner from escaping liability" because of the lack of an employment or agency relationship with the driver. Although New York's compensatory purpose is especially strong when the victim is a New Yorker, the "innocent victim class has not been limited to New Yorkers." When the accident occurs in New York, the compensation of the victim serves a *492 related governmental interest in "assuring that New York vendors who furnish medical and hospital care to injured parties are compensated."
In enacting Section 388 New York also intended to regulate the conduct of automobile owners by "discouraging owners from lending their vehicles to incompetent or irresponsible drivers." We note that despite Section 388's explicitly stated purpose to deter irresponsible lending, ... Section 388 [has been characterized] solely as a loss-allocating rule because it "does not purport to regulate the conduct of the operator on the road." At the same time, [it has been acknowledged] that Section 388 was intended to operate "as an incentive to lessors of motor vehicles to lease only to competent individuals." That deterrent policy has been construed by New York as having particular application to car rental agencies, "who clearly make no investigation of the capacity or sense of responsibility of the lessee other than the production of the driver's license." [Fu, supra, 160 N.J. at 119-20, 733 A.2d 1133 (citations omitted).]
On the other hand, New Jersey's common law rule regarding owner liability "is not designed to protect the injured party ... or to protect the driver." Id. at 120, 733 A.2d 1133 (quoting Haggerty v. Cedeno, 279 N.J.Super. 607, 611, 653 A.2d 1166 (App.Div.), certif. denied, 141 N.J. 98, 660 A.2d 1197 (1995)). Instead, New Jersey's common law rule was designed "to shield an owner from liability in cases in which the owner has not been negligent and in which the culpable driver is not related to the owner in a way that will justify the imposition of vicarious liability under traditional principles of the law of agency or master servant. That shield is consistent with the principle that tort liability in the context of automobile-related personal injuries is based on fault." Fu, supra, 160 N.J. at 120, 733 A.2d 1133 (quoting Haggerty, supra, 279 N.J.Super. at 611-12, 653 A.2d 1166).
In determining which of these conflicting rules of law should govern the dispute between plaintiff and Paccar, we are obligated to consider (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states. Fu, supra, 160 N.J. at 122, 733 A.2d 1133. The Court in Fu thoroughly canvassed these principles and their application to the particular circumstances of that case. We, thus, need not extensively reiterate the Court's thorough discussion of those interests but must, instead, determine whether the circumstances of this case compel the same or a different result than that reached in Fu.
In Fu, plaintiffs were New Jersey residents who rented an automobile in Lawrenceville, New Jersey from a Delaware corporation with its principal place of business in Pennsylvania. Plaintiffs drove the vehicle from New Jersey into New York and were eventually injured in a one-car accident in Hamburg, New York. One of the plaintiffs remained hospitalized in New York for approximately thirty days. 160 N.J. at 114-15, 733 A.2d 1133.
The Court recognized that New Jersey had several contacts with the matter. New Jersey was the forum state, the domicile of the injured plaintiffs, the domicile of the defendant-driver, and the place where the underlying rental transaction occurred. The Court, however, found that "New Jersey's status as the forum state is irrelevant to the choice of law." Id. at 130, 733 A.2d 1133. In addition, the Court said that the fact that "the underlying transaction, including the execution of the rental contract, *493 occurred in New Jersey also appears to have minimal significance to the issue of vicarious liability." Id. at 131, 733 A.2d 1133. Instead, the Court emphasized that "[t]he event giving rise to vicarious liability was not the rental transaction, but the automobile accident, which occurred in New York." Ibid. The Court also emphasized, in concluding that New York's Section 388 should apply in that case, that the "domicile, residence, place of incorporation and place of business" of the vehicle owner "are relevant, although not dispositive, considerations in a choice-of-law determination." Id. at 133, 733 A.2d 1133.
In urging the application of New York law, plaintiff emphasizes the New York aspects of this occurrence, namely, that R & L, which is the lessee of the truck, is a New York entity; that the truck was registered in New York; and that R & L leased the vehicle in a transaction that occurred in New York. It is also arguable, contrary to Paccar's assertions, that Paccar was doing business in New York with regard to this and perhaps other similar transactions; we assume this to be true for present purposes. However, as the Court held in Fu, the rental transaction is of "minimal significance" to the issue of vicarious liability"[t]he event giving rise to vicarious liability was not the rental transaction, but the automobile accident." 160 N.J. at 131, 733 A.2d 1133. In Fu, the accident occurred in New York, a fact that significantly influenced the Court's application of New York law in that case. Here, the accident occurred in New Jersey. For the same reasons outlined in Fu, New Jersey law should apply here.
That is not to say that because the Court in Fu found the location of the accident to be of great significance that the choice-of-law determination turns solely on that fact. If so, we would be turning the clock back to the days of lex loci delicti. Like the Court's decision in Fu to apply New York law, our determination that New Jersey law governs plaintiff's claim against Paccar turns on more than just the situs of the accident. Here, like the circumstances in Fu, the owner of the vehicle has no significant relationship to New York. It may have participated in a lease transaction that occurred in New York and it may have done business in New York, but Paccar has not been shown to be domiciled in or a resident of New York.[3]
Moreover, the interests of interstate comity and the competing interests of states would be aggravated if Section 388 was to govern in this case. This consequence was not faced by the Court in Fu because, as the Court observed, that case did "not involve the extraterritorial application of Section 388" but instead "concern[ed] a wholly domestic application of [Section 388], which on its face regulates accidents arising from the negligent use and operation of a vehicle within the State of New York." 160 N.J. at 128, 733 A.2d 1133. Thus, although the Court in Fu recognized that "New York has a strong interest in applying Section 388 to an accident within its borders," its interests "in deterrence and compensation must be compared and weighed against any governmental interest that New Jersey has in applying its vicarious liability law based on New Jersey's contacts with the litigation and the parties." Id. at 130, 733 A.2d 1133. Again this case is unlike Fu, where the accident occurred in New York, thus triggering New York's strong interest in *494 applying Section 388 to accidents occurring within its borders. Here, the accident occurred in New Jersey, thereby actuating New Jersey's strong interest in applying its own policies, which are embodied in its common law rule against imposing vicarious liability on passive owners, to accidents occurring within its borders.
In addition, we observe that New York's policies in discouraging New York vehicle owners from lending their vehicles to incompetent or irresponsible drivers is also inapplicable to the particular circumstances at hand. Paccar entered into a long-term lease with R & L and did not purport to govern R & L's selection of drivers. Paccar, through its lease agreement with R & L, implicitly intended to relinquish any further involvement as to the truck's use. Thus, any influence Paccar played in the eventual use of the vehicle was its determination to allow R & L to operate the vehicle, and, as that decision relates to the policies underlying Section 388, there is no suggestion that R & L was an incompetent or irresponsible driver. To the contrary, the record reflects that R & L is insured; in fact, the Paccar-R & L lease agreement required R & L to maintain liability insurance "in an amount not less than $1,000,000 per occurrence." Thus, while New York has demonstrated an interest in influencing the decisions of lessors in allowing others to use their vehicles, the decision to allow Harvey to drive the vehicle is one which Paccar neither made nor participated in; that decision was made by R & L. In short, Section 388 is a product of New York's interest in "ensur[ing] access by injured persons to a financially responsible insured person against whom to recover for injuries." 160 N.J. at 119, 733 A.2d 1133 (quoting Morris v. Snappy Car Rental, Inc., 84 N.Y.2d 21, 614 N.Y.S.2d 362, 637 N.E.2d 253, 255 (1994)). Here, plaintiff already has access to an insured and financially responsible entityR & L. Accordingly, the New York governmental interest urged by plaintiff, if applicable, is not compelling here and certainly not so compelling as to permit extraterritorial application of Section 388 in contravention of New Jersey's own compellingand contrarygovernmental interest.
Lastly, Section 388's secondary interest in "assuring that New York vendors who furnish medical and hospital care to injured parties are compensated," Fu, supra, 160 N.J. at 119, 733 A.2d 1133 (quoting Bray v. Cox, 39 A.D.2d 299, 333 N.Y.S.2d 783, 785 (N.Y.App.Div.1972)), is also not implicated here. Plaintiff has not asserted that any New York entity provided any care or treatment to plaintiffyet another reason why there is a diminished New York interest in the application of its own laws to an accident that occurred in New Jersey.
For these reasons, we conclude that the trial judge mistakenly denied Paccar's motion for summary judgment. New Jersey law governs Paccar's responsibility for the accident allegedly caused by Harvey while driving a vehicle leased by R & L from Paccar because New Jersey has the greatest governmental interest in the application of its laws to this issue. We, thus, vacate the orders of July 7, 2005, and remand for the entry of an order dismissing the complaint.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Plaintiff's earlier filed separate complaint against R & L, Harvey and Hwang in the Law Division was assigned Docket No. BER-L-7898-02. It is not clear why plaintiff decided to pursue these claims in piecemeal fashion, nor has any party asserted that the present action is barred by the pendency of the earlier action. The record on appeal also does not disclose whether these suits have been consolidated, although plaintiff indicates in her brief that a motion to consolidate was filed in October 2005.
[2] In seeking summary judgment, defendants asserted that Paccar, Inc., a Delaware corporation with its principal place of business in Washington, was not a party to the lease agreement with R & L, and that Paccar Leasing Corp. does not exist. The trial judge dismissed the complaint as to the former, but not the latter. Since there was no dispute that Paccar Leasing, Inc. does not exist, the claim against it should also have been dismissed.
[3] Although the record may generate a legitimate inference that Paccar does business in the State of New York, there is no evidence to support the trial judge's observation that the seller of the vehicle, Kenworth Truck of Upstate NY, Inc., "is a division of Paccar and has offices ... in the State of New York."