[No. B189140. Second Dist., Div. Five. Sept. 4, 2007.]

MARIO CASTRO et al., Plaintiffs and Appellants, v.
BUDGET RENT-A-CAR SYSTEM, INC., et al., Defendants and
Respondents.

**COUNSEL**

Law Offices of Manuel Hidalgo, Manuel Hidalgo and Rolando Hidalgo for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Donald G. Forgey, Heidi M. Yoshioka and Caroline E. Chan for Defendants and Respondents.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

Plaintiff Mario Castro (Castro),[1] a California resident, sustained physical injuries in a traffic collision in Alabama allegedly caused by an overturned truck owned by defendant and respondent Budget Rent-A-Car System, Inc. (Budget).[2] Prior to the accident, Budget had leased the truck that overturned to defendant Carlos Diaz, doing business as Carlos Diaz Fresh Produce (Diaz). At the time of the accident, Diaz's employee, defendant Jose Lopez (Lopez), was driving Budget's leased truck while allegedly intoxicated.

---

[1] Raquel Ontiveras, Castro's wife, is also a named plaintiff in the operative complaint and an appellant. Her claim for lost consortium is derivative of and dependent upon Castro's negligence claims. Reference to "plaintiffs" is to Mario Castro and Raquel Ontiveras.

[2] Defendant and respondent Cendant Corporation acquired Budget after the accident. We will refer to Budget and Cendant Corporation together as Budget.

Plaintiffs sued Budget and others in California state court for negligence and lost consortium. The trial court granted summary judgment in favor of Budget on the grounds that Alabama law—not federal or California law—applied and that under Alabama's common law doctrine governing the permissive use of motor vehicles (permissive user law), Budget was not responsible for the negligence of either Diaz or Lopez. On appeal, plaintiffs contend that federal law or the common law nondelegable duty doctrine should apply, either of which would result in Budget's liability. They argue that at the time of the accident, Budget qualified as a "motor carrier" under applicable federal law,[3] and as a consequence is financially responsible for their injuries.

We hold that in connection with the accident, Budget was not a "motor carrier" as that term is defined in the relevant federal statutes, regulations, and case law and therefore is not liable under federal law or the common law nondelegable duty doctrine. As the trial court ruled, Budget's liability to plaintiffs is governed by Alabama's permissive user law that entitled Budget to summary judgment. We therefore affirm the judgment of the trial court.

## FACTUAL BACKGROUND

### A. *Budget's Undisputed Facts*

On July 22, 2002, Castro, a California resident, was a passenger in a vehicle that was involved in an accident on Interstate 20 in the State of Alabama. Budget owned the other vehicle involved in the accident and had leased it to Diaz in Alabama. Budget's truck was operated by Lopez at the time of the accident.

### B. *Castro's Additional Disputed Facts*

Budget is in the business of renting or leasing motor vehicles to be operated on the public highways. Budget's truck was leased for commercial use to Diaz to transport produce from Alabama across state lines to Florida. Budget leased the truck to Diaz on July 14, 2002, with knowledge that the truck would be used in the course of Diaz's business, and with the

---

[3] Plaintiffs rely on various sections of title 49 of the United States Code, and the regulations promulgated thereunder, dealing with interstate motor transportation, including 49 United States Code section 13101 et seq., and 49 United States Code section 31101 et seq. The specific federal statutes and implementing regulations raised by the parties are discussed below.

knowledge that the truck might be used to conduct business across state lines. On July 22, 2002, Budget's truck was registered and licensed in the State of California. Budget's truck weighed over 10,000 pounds.

Diaz purchased liability protection from Budget on July 14, 2002, for the business rental of Budget's truck because he did not have insurance. On July 22, 2002, Budget possessed a certificate of self-insurance issued by the State of Alabama.

As of July 22, 2002, Budget was assigned a United States Department of Transportation (DOT) number by the Federal Motor Carrier Safety Administration (FMCSA).[4] A "Motor Carrier Identification Report" or "Form MCS-150" is used to obtain a DOT number from FMCSA. Form MCS-150 defines "Registrant" as "[a]n entity who registers commercial motor vehicle[s] with a State but does not operate as a motor carrier. For example, a company that is engaged solely in renting or leasing vehicles, or [a] for-hire operator that always operates under the authority of another company."

As of July 22, 2002, Budget was assigned DOT No. 371886 by FMCSA. The Form MCS-150 produced by FMCSA for Budget's DOT No. 371886 application indicates that Budget registered with FMCSA as an "Interstate Carrier." That form also indicates that Budget entered "daily rental" in the "Operation Classification" portion of the form and "general freight" and "household goods" in the "Cargo Classifications" portion of the form.

## PROCEDURAL BACKGROUND

Plaintiffs' first amended complaint included causes of action for motor vehicle negligence, general negligence, and negligence per se against Budget. Plaintiffs alleged that Castro was injured in a traffic accident in Alabama caused by Budget. They further alleged that Lopez was operating Budget's truck in the course and scope of his employment with Diaz at the time of the accident, and that Lopez was intoxicated when he lost control of the truck and overturned it in the middle of the roadway, blocking both lanes

---

[4] "FMCSA, an agency within the Department of Transportation (DOT), is responsible for motor carrier safety and registration. See 49 U.S.C. § 113(f). FMCSA has a variety of statutory mandates, including 'ensur[ing]' safety, [section] 31136, establishing minimum levels of financial responsibility for motor carriers, [section] 31139, and prescribing federal standards for safety inspections of commercial motor vehicles, [section] 31142." (*Department of Transportation v. Public Citizen* (2004) 541 U.S. 752, 758 [159 L.Ed.2d 60, 124 S.Ct. 2204].)

of traffic. According to plaintiffs, Lopez's "negligent and reckless operation of his truck while intoxicated, and his subsequent abandonment thereof, created an ultra-hazardous condition which resulted in the unavoidable crash of [Castro's] truck . . . [and] severe bodily injuries [to Castro]."

Budget filed a motion for summary judgment on the grounds that Alabama law applied and that under Alabama's permissive user law, Budget was not liable for the negligence of either Diaz or Lopez. Plaintiffs opposed the motion, arguing that Budget was a "motor carrier" subject to the federal statutes and regulations governing interstate motor transportation and therefore responsible for plaintiffs' damages. In support of their opposition to the motion, plaintiffs filed the declaration of an expert who opined that Budget was a motor carrier subject to federal regulation, including the regulatory provisions that require minimum insurance coverage of $750,000.

The trial court ruled that the federal statutes and regulations upon which plaintiffs relied did not apply to Budget, that Alabama law controlled the liability issue, and that Budget was entitled to summary judgment. The trial court subsequently entered judgment in favor of Budget and against plaintiffs. Plaintiffs timely appealed.

## DISCUSSION

### A. *Standard of Review*

"We review the grant of summary judgment de novo. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].) We make 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1216–1217 [130 Cal.Rptr.2d 198].)

"In performing our de novo review, we view the evidence in the light most favorable to plaintiffs as the losing parties. [Citation.] In this case, we

liberally construe plaintiffs' evidentiary submissions and strictly scrutinize defendants' own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiffs' favor." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].) " 'Regardless of how the trial court reached its decision, it falls to us to examine the record de novo and independently determine whether that decision is correct.' " (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [23 Cal.Rptr.3d 915].)

## B. *Budget Was Not a Motor Carrier*

Plaintiffs contend that Budget is a motor carrier subject to the "control and responsibility" requirements of federal law (49 U.S.C. § 14102(a)(4); 49 C.F.R. § 376.12(c)(1) (2006); see *Transamerican Freight v. Brada Miller* (1975) 423 U.S. 28, 29 [46 L.Ed.2d 169, 96 S.Ct. 229]) and is therefore liable for Diaz's negligent operation of Budget's truck. In support of this contention, plaintiffs rely on the federal statute and regulations that require motor carriers to maintain specified levels of financial responsibility in the form of insurance or self-insurance. (49 U.S.C. § 31139; 49 C.F.R. § 387.1 et seq. (2006).) According to plaintiffs, Budget, through self-insurance, voluntarily complied with the minimum financial responsibility requirements under federal law, thereby demonstrating that Budget is a motor carrier subject to those requirements. The issue therefore is whether Budget, as a lessor of the vehicle involved in the accident, qualifies as a motor carrier in connection with that incident, so as to be subject to the federal "control and responsibility" requirements upon which plaintiffs rely.

"During the first half of the twentieth century, interstate motor carriers attempted to immunize themselves from liability for negligent drivers by leasing trucks and nominally classifying the drivers who operated the trucks as 'independent contractors.' [Citations.] In order to protect the public from the tortious conduct of the often judgment-proof truck-lessor operators, Congress in 1956 amended the Interstate Common Carrier Act to require interstate motor carriers to assume full direction and control of the vehicles that they leased 'as if they were the owners of such vehicles.' [Citations.] The purpose of the amendments to the Act was to ensure that interstate motor carriers would be fully responsible for the maintenance and operation of the leased equipment and the supervision of the borrowed drivers, thereby protecting the public from accidents, preventing public confusion about who was financially responsible if accidents occurred, and providing financially

responsible defendants." (*Morris v. JTM Materials, Inc.* (Tex.App. 2002) 78 S.W.3d 28, 37–38, fn. omitted.) The goal was to make *lessees* of trucks responsible for the negligent operation of those trucks, regardless of whether the lessees employed the drivers. "The Surface Transportation Board (formerly the Interstate Commerce Commission[5]) and the Secretary of Transportation enforce the United States Government's transportation policy with regard to transportation by motor carrier (49 U.S.C. § 13101(a)(2)), and the Board has jurisdiction over the transportation of property by motor carrier between a place in one state and a place in another state. (49 U.S.C. § 13501(1)(A).)" (*Serna v. Pettey Leach Trucking, Inc.* (2003) 110 Cal.App.4th 1475, 1477 [2 Cal.Rptr.3d 835] (*Serna*).)

■ Neither party disputes that "motor carriers . . . are required to comply with the provisions of Title 49 [of the United States Code] and the regulations promulgated thereunder." (*Johnson v. S.O.S. Transport, Inc.* (6th Cir. 1991) 926 F.2d 516, 521.) Title 49 United States Code section 14102(a)(4) requires motor carriers that use leased vehicles to "have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier." Under 49 Code of Federal Regulations part 376.12(c)(1) (2006), the lease agreements covering such vehicles "shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." The control and responsibility requirements under federal law "render lessee carriers vicariously liable, notwithstanding traditional principles of agency, for injuries sustained by third parties resulting from the negligence of the drivers of leased vehicles." (*Johnson v. S.O.S. Transport, Inc., supra*, 926 F.2d at p. 522.)

■ Title 49 United States Code section 31139 and the regulations promulgated under that provision prescribe "the minimum levels of financial responsibility required to be maintained by motor carriers of property operating motor vehicles in interstate, foreign, or intrastate commerce." (49 C.F.R. § 387.1 (2006).) The financial responsibility provisions complement the

---

[5] The Interstate Commerce Commission (ICC) no longer exists. "In 1995, Congress abolished the ICC and transferred most of its responsibilities to the Secretary of Transportation. See ICC Termination Act of 1995, [section] 101, 109 Stat. 803. In 1999, Congress transferred responsibility for motor carrier safety within the DOT to the newly created FMCSA. See Motor Carrier Safety Improvement Act of 1999, 113 Stat. 1748." (*Department of Transportation v. Public Citizen, supra*, 541 U.S. at p. 759, fn. 1.)

control and responsibility requirements. "The purpose of [the regulations promulgated under section 31139] is to create additional incentives to motor carriers to maintain and operate their vehicles in a safe manner and to assure that motor carriers maintain an appropriate level of financial responsibility for motor vehicles operated on public highways." (*Ibid.*) According to those regulations "[n]o motor carrier shall operate a motor vehicle until the motor carrier has obtained and has in effect the minimum levels of financial responsibility as set forth in [part] 387.9 of this subpart." (49 C.F.R. § 387.7(a) (2006).)[6]

■ The financial responsibility regulations apply to (i) *"for-hire motor carriers* operating motor vehicles transporting property in interstate or foreign commerce" (49 C.F.R. § 387.3(a) (2006), italics added); and (ii) *"motor carriers* operating motor vehicles transporting hazardous materials, hazardous substances, or hazardous wastes in interstate, foreign, or intrastate commerce" (49 C.F.R. § 387.3(b) (2006), italics added). Under 49 Code of Federal Regulations part 387.9 (2006), motor carriers engaged in "for-hire" carriage are required to maintain liability insurance in the amount of $750,000 for nonhazardous interstate or foreign commerce that has a "gross vehicle weight rating of 10,001 or more pounds." That section further provides that "motor carriers" engaged in either "for-hire" or "private" carriage involving the transportation of hazardous materials, hazardous substances, or hazardous waste are required to maintain higher levels of liability insurance. (49 C.F.R. § 387.9 (2006).)

■ Title 49 United States Code section 13102 contains a series of definitions applicable to, inter alia, interstate motor carriers. Section 13102(15) defines a "motor private carrier" as "a person, other than a motor carrier, transporting property by commercial motor vehicle (as defined in section 31132) when—[¶] (A) the transportation is as provided in section 13501 of this title; [¶] (B) the person is the owner, lessee, or bailee of the property being transported; and [¶] (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." Section 13102(14) defines "motor carrier" as "a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation."

___

[6] "Congress enacted the [Motor Carrier Act of 1980], in part, to address abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce. [Citations.] Accordingly, one remedial measure provided in the [Motor Carrier Act of 1980] is a liability insurance requirement imposed upon each motor carrier registered to engage in interstate commerce . . . ." (*Canal Ins. Co. v. Distribution Services, Inc.* (4th Cir. 2003) 320 F.3d 488, 489.)

■ The financial responsibility regulations define "motor carrier" as a "for-hire motor carrier or private motor carrier. The term includes, but is not limited to, a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." (49 C.F.R. § 387.5 (2006).) Although the financial responsibility regulations do not contain a specific definition of either a "for-hire motor carrier" or a "private motor carrier," they define "[f]or-hire carriage" as "the business of transporting, for compensation, the goods or property of another." (*Ibid.*)

Moreover, 49 United States Code section 31139(c)—the statute under which the financial responsibility regulations were promulgated—cross-references the definition of "motor private carrier" contained in 49 United States Code section 13102(15). That a provision in the financial responsibility statute cross-references and incorporates the definition of "motor private carrier" in 49 United States Code section 13102 suggests that the general definitions in section 13102, including the definition of a "motor carrier" in subsection (14) quoted above, are applicable to section 31139 and the financial responsibility regulations promulgated under it.

Plaintiffs contend that Budget, as the *lessor* of the truck that caused Castro's injuries, qualifies as a motor carrier under federal law, and is therefore financially responsible for their injuries. But the quoted code sections and regulations do not mention "lessors" in the various definitions of "motor carrier," "motor private carrier," or "for-hire" carriage. If Congress or the DOT had intended to extend to lessors of equipment (including lessor-owners) the financial responsibility requirements imposed under title 49 of the United States Code, the code sections and regulations that define those requirements should contain some explicit reference to lessors that would cover vehicle leasing companies such as Budget. The absence of any such reference in the applicable code sections and regulations supports the conclusion that they do not apply to lessors of vehicles.

Notwithstanding the absence of any reference to lessors in the code sections and regulations upon which they rely, plaintiffs maintain that Budget is a federally regulated motor carrier because it is in the business of leasing to others commercial vehicles that will be used to transport goods or property across state lines, and it is compensated for that activity. Budget correctly counters that the mere act of leasing the truck to Diaz did not qualify it as a motor carrier because it did not retain possession or control over the truck or otherwise operate the truck to transport goods. Budget cites *Del Real v. U.S. Fire Ins.* (E.D.Cal. 1998) 64 F.Supp.2d 958 (*Del Real*) in support of its position.

In *Del Real, supra*, 64 F.Supp.2d 958, the plaintiffs, relatives of the victim of a fatal traffic collision, obtained a state court judgment against the owner of the truck involved in the collision. At the time of the accident, the truck was pulling a trailer that the truck's owner had leased from Strick Leasing. (*Id.* at p. 960.) In a separate insurance coverage action in federal court, the plaintiffs attempted to recover the unsatisfied amount of the state court judgment from Strick Leasing's insurer. (*Id.* at p. 961.) The plaintiffs argued that by leasing the trailer to the truck owner, Strick Leasing was a "motor carrier" subject to the financial responsibility requirements of title 49 of the United States Code, including the requirement that it procure an MCS-90 endorsement[7] to cover injuries that arise in the operation, maintenance, or use of motor vehicles subject to the financial responsibility requirements. (64 F.Supp.2d at pp. 963–964.)

The court in *Del Real, supra*, 64 F.Supp.2d 958, rejected the plaintiffs' contention that Strick Leasing, as lessor of the trailer, was a motor carrier as that term is defined in the regulations promulgated under 49 United States Code section 31139. According to the court in *Del Real*, Strick Leasing was "an equipment lessor of trailers, and not a for-hire motor carrier." (64 F.Supp.2d at p. 965.) Therefore, the court concluded that the leased trailer was not "subject to the financial responsibility requirements of the Motor Vehicle Act."[8] (64 F.Supp.2d at p. 965.)

---

[7] "The Motor Carrier Act of 1980 . . . and its implementing regulations require [motor] carriers . . . to demonstrate that they are in some way insured against damage they cause. [Fn. omitted.] A carrier can fulfill its responsibility by 1) a form MCS-90 endorsement attached to a contract of insurance, 2) a surety bond, or 3) self-insurance." (*Wells v. Gulf Ins. Co.* (5th Cir. 2007) 484 F.3d 313, 314.) Federal regulations provide that if a registrant opts to pursue the first option and demonstrate financial responsibility through proof of insurance, the insurer must maintain a "Form MCS-90 Endorsement" as part of the policy. (49 C.F.R. § 387.15 (2006).) " 'It is well-established that the primary purpose of the MCS-90 [endorsement] is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers.' [Citation.]" (*Canal Ins. Co. v. Distribution Services, Inc., supra*, 320 F.3d at p. 490.)

[8] The court in *Del Real, supra*, 64 F.Supp.2d 958, did not specify the standard by which it determined that the lessor of the trailer was not a motor carrier under the financial responsibility requirements of title 49 of the United States Code. In an older criminal case, however, a federal district court set forth the following standard: "In determining whether the lessor of motor vehicle equipment is engaged in transportation subject to regulation under the Interstate Commerce Act, all services rendered or supplied, and acts performed by the lessor, along with the naked equipment, become of controlling weight in determining the status of the lessor. The amount of this service determines whether the lessor is a 'carrier' or is engaged in the private business of operating a truck rental agency." (*United States v. La Tuff Transfer Service* (D.Minn. 1950) 95 F.Supp. 375, 379–380 (*La Tuff*).) The United States Supreme Court subsequently cited *La Tuff* with approval. (*United States v. Drum* (1962) 368 U.S. 370, 384, fn. 29 [7 L.Ed.2d 360, 82 S.Ct. 408] [dealing with the propriety of an ICC cease and desist order and the issue of whether a furniture manufacturer was engaged in carriage for hire under certain equipment lease arrangements into which it had entered with owner-drivers].)

Plaintiffs contend that *Del Real, supra*, 64 F.Supp.2d 958, is distinguishable from this case because here Budget was using a lease arrangement with Diaz to disguise that it qualified as a "motor carrier" under federal law and to avoid the financial responsibility requirements imposed under that law. The undisputed facts in the instant case, however, do not fit the typical situation in which a lease arrangement is used to disguise the provision of transportation services in an attempt to avoid the application of the safety and financial responsibility requirements of federal law.[9] These facts show that there was a lease agreement between the parties, nothing more. There are no facts showing that agreement was not legitimate and not entered into in good faith, or that Budget was trying to evade the letter or spirit of the law. There is nothing about the straightforward lease agreement that suggests or implies that Budget was engaging in the transportation of goods or property for compensation. On this record, Budget was not a motor carrier within the meaning of the cited federal statutes and regulations.

Plaintiffs emphasize that in certain documents filed with the DOT, Budget identified itself as an "Interstate Carrier" engaged in the business of transporting "general freight" and "household goods." Therefore, according to plaintiffs, there is a triable issue of fact concerning whether Budget was acting as a motor carrier in connection with Diaz's lease of the truck from Budget.

Plaintiffs' evidence arguably may raise a triable issue of fact as to whether, as a general matter, Budget was a registered carrier authorized to transport goods or property interstate for compensation. That evidence, however, does not address the issue in this case—whether Budget was acting as a motor carrier in connection with the accident in question. As we have concluded, Budget was not a motor carrier in connection with the accident because Budget's lease transaction did not constitute the business of transporting goods for hire. It was not hired to transport the load of produce being shipped by Diaz, did not dispatch or employ Lopez to deliver the produce, and was not transporting the produce itself as a private carrier. In connection with the vehicle lease in question, Budget was not a motor carrier under federal law, and therefore federal law does not render it liable to plaintiffs.

---

[9] "A lease of equipment, which is permissible under defined circumstances, must be distinguished, however, from a sharing or lending of operating authority, which is not permitted. Under the Motor Carrier Act, 1935, [citation], only a properly certificated carrier may haul freight in interstate or foreign commerce. . . . As a consequence, the [Interstate Commerce] Commission has developed and designed its responsibility-and-control regulations in order to prevent a sharing of operating authority under the guise of a lease of equipment." (*Transamerican Freight v. Brada Miller, supra*, 423 U.S. at pp. 35–36 [46 L.Ed.2d 169, 96 S.Ct. 229].)

## C. *Nondelegable Duty Doctrine*

██ Under California's nondelegable duty doctrine, "a carrier who undertakes an activity (1) which can be lawfully carried on only under a public franchise or authority and (2) which involves possible danger to the public is liable to a third person for harm caused by the negligence of the carrier's independent contractor." (*Serna, supra,* 110 Cal.App.4th at p. 1486.) Plaintiffs contend that Budget was conducting business under a federal franchise as a motor carrier, and, under the nondelegable duty doctrine, Budget is responsible for Diaz's negligence regardless of Alabama's permissive user law.

In support of their nondelegable duty argument, plaintiffs rely primarily on *Serna, supra,* 110 Cal.App.4th 1475.[10] In that case, the defendant, a carrier subject to federal regulation, entered into a contract with a Georgia poultry company for the defendant to arrange transportation to California of a load of frozen poultry. (*Serna,* at p. 1478.) The defendant then arranged for another company to pick up the load of poultry and transport it to California, using that company's truck and driver. (*Ibid.*) After entering California, the truck collided with a motorcycle, killing the motorcycle's driver. (*Ibid.*) The victim's wife and children sued the defendant, contending the defendant was vicariously liable for the truck driver's negligence. (*Ibid.*)

The trial court in *Serna, supra,* 110 Cal.App.4th 1475, granted a nonsuit in favor of the defendant, ruling that the defendant was not vicariously liable for the truck driver's negligence. (*Id.* at pp. 1478–1479.) The trial court concluded that the type of goods being shipped exempted the defendant carrier from federal regulations and permit requirements. The Court of Appeal reversed, holding that a carrier that undertakes an activity that can be lawfully carried on only under a public franchise or authority and that involves possible danger to the public is liable to third parties who are injured by the carrier's subcontractor. (*Id.* at p. 1486.) According to the court in *Serna,* "[w]ere the rule otherwise, a carrier could escape liability for the negligence of its independent contractors, thus reducing the incentive for careful supervision and depriving those who are injured of the financial responsibility of those to whom the privilege was granted. For these reasons, the carrier's duties are nondelegable, and it is only when the carrier is 'not regulated' at all that the rule is otherwise." (*Ibid.*) In reaching its conclusion that the

---

[10] Plaintiffs do not explain why California law should be applied to the issue of Budget's liability for their injuries. As discussed below, Alabama law applies to the liability issue in this case. Nevertheless, it appears that the nondelegable duty doctrine is a general common law principle recognized under both California and Alabama law. (See *Serna, supra,* 110 Cal.App.4th at pp. 1479–1486; *Phillips v. J.H. Transport, Inc.* (Ala. 1990) 565 So.2d 66, 69–70 [" ' "[w]here one operates a motor carrier under a government franchise, he assumes liability for the acts done by others to whom he grants permission to use his franchise and permit." He may not delegate his rights under his franchise and permit and thus avoid liability' "].)

carrier was liable, the court in *Serna* rejected the argument that the carrier was "not regulated," holding that although the cargo was exempt from economic regulation, the carrier was not exempt from federal safety and financial regulation. (*Ibid.*)

The rule stated in *Serna, supra*, 110 Cal.App.4th 1475, has no application to the facts here. The *Serna* case presented the paradigm in which a shipper contracts with a carrier operating under a franchise to transport the shipper's goods interstate, and the carrier arranges for a subcontractor to perform the transportation services on the carrier's behalf. Under the nondelegable duty doctrine discussed above, the carrier is treated in such cases as if it owned the truck and employed the driver for purposes of determining the carrier's liability for the negligence of the subcontractor.

Here, it is undisputed that Budget did not contract with anyone to transport the produce that was being hauled by Lopez at the time of the accident. Nor did Budget subcontract with Diaz to perform transportation services on Budget's behalf. Budget leased the truck to Diaz under a lease agreement, and Diaz performed the transportation of goods using an employee, Lopez. In leasing the truck to Diaz, Budget did not engage in an activity that could lawfully be carried out only under a public franchise or authority. Moreover, Budget did not engage in an activity that was potentially dangerous to the public, as was the defendant's transportation of goods across state lines in *Serna, supra*, 110 Cal.App.4th 1475. Instead, as discussed above, Budget's business lease activity in this case was "not regulated" under the federal statutes and regulations upon which plaintiffs rely because Budget was not acting as a "motor carrier," and therefore was not subject to the financial responsibility requirements governing such carriers. Thus, unlike the situation in *Serna*, which turned on the question of exempt goods, here the business activity itself is not subject to the federal regulations in issue. As a result, Budget had no duty under the common law nondelegable duty doctrine to assume financial responsibility for Diaz's negligence.

## D. *The Applicable State Law*

Budget contends that because federal law does not govern the issue of its responsibility for Castro's injuries, the state law of either Alabama or California governing the liability of vehicle owners for the negligence of permissive users should control the liability issue. Because plaintiffs argue that either federal law or the common law nondelegable duty doctrine

controls, they do not address the issue of whether the permissive user rules of Alabama or California should apply.[11]

■ As discussed above, the federal law upon which plaintiffs rely does not apply to the facts of this case. We therefore agree with Budget that either Alabama or California law should be applied to the issue of Budget's liability to plaintiffs. Under the undisputed facts of this case, and as the trial court correctly ruled, Alabama's permissive user law controls that issue and entitles Budget to a judgment in its favor as a matter of law.

"Past decisions establish that in analyzing a choice-of-law issue, California courts apply the so-called governmental interest analysis, under which a court carefully examines the governmental interests or purposes served by the applicable statute or rule of law of each of the affected jurisdictions to determine whether there is a 'true conflict.' If such a conflict is found to exist, the court analyzes the jurisdictions' respective interests to determine which jurisdiction's interests would be more severely impaired if that jurisdiction's law were not applied in the particular context presented by the case. [Citations.]" (*Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 100 [45 Cal.Rptr.3d 730, 137 P.3d 914].) The comparison is not about " 'which conflicting law manifest[s] the "better" or the "worthier" social policy.' " (*Offshore Rental Co. v. Continental Oil Co.* (1978) 22 Cal.3d 157, 165 [148 Cal.Rptr. 867, 583 P.2d 721] (*Offshore*).) Rather, it is about the "relative commitment of the respective states to the laws involved." (*Id.* at p. 166.)[12]

■ Under the governmental interest analysis, we must first determine whether there is a true conflict between Alabama's permissive user law and California law. As Budget points out, there appears to be such a conflict in this case. Under Alabama law, the owner of a vehicle is not liable for the negligence of a permissive user of that vehicle. (*Patterson v. Harris* (1995) 674 So.2d 67, 69; *Downes v. Norrell* (1954) 261 Ala. 430 [74 So.2d 593, 597] ["Permissive use alone does not furnish any basis for liability against the owner . . ."]; *Cruse-Crawford Mfg. Co. v. Rucker* (1929) 220 Ala. 101 [123 So. 897] ["The doctrine is also well known that an owner of a car is generally not liable for the consequences of the negligence of a bailee or borrower while so operating the car . . ."].) In California, however, the owner of a

---

[11] Budget raised before the trial court the issue of whether Alabama or California law applied, if federal law did not.

[12] "Ease of determining applicable law and uniformity of rules of decision, however, must be subordinated to the objective of proper choice of law in conflict cases, i.e., to determine the law that most appropriately applies to the issue involved . . . . We conclude that the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this state." (*Reich v. Purcell* (1967) 67 Cal.2d 551, 555 [63 Cal.Rptr. 31, 432 P.2d 727] (Traynor, C. J.).)

vehicle is liable for the negligence of a permissive user of that vehicle, but the amount of damages for which the owner can be held liable is limited. (Veh. Code, §§ 17150, 17151, subd. (a).)[13]

■ We therefore assume, for purposes of analysis, that the application of Alabama law to this case would result in a finding that Budget has no liability, whereas the application of California law could result in a finding that Budget is liable, albeit for a limited amount. Accordingly, we must " 'determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state.' " (*Cable v. Sahara Tahoe Corp.* (1979) 93 Cal.App.3d 384, 394 [155 Cal.Rptr. 770].) "The state with the 'predominant' interest in controlling conduct normally is the state in which such conduct occurs and is most likely to cause injury." (*Ibid.*; see also *Offshore, supra,* 22 Cal.3d at p. 168 ["although the law of the place of the wrong is not necessarily the applicable law for all tort actions [citation], the situs of the injury remains a relevant consideration"].)

■ The accident and Castro's injury occurred within Alabama's borders, thus giving Alabama a presumptive interest in controlling the conduct of those persons who use its roadways, absent some other compelling interest to be served by applying California law. Alabama's common law rule, noted above—that mere ownership of an automobile does not render the owner liable for the negligence of a permissive user—is well established in a long line of cases. (*Cruse-Crawford Mfg. Co. v. Rucker, supra,* 123 So. at p. 897; *Thompson v. Curry* (1951) 36 Ala.App. 334 [56 So.2d 359, 360]; *Downes v. Norrell, supra,* 74 So.2d at p. 597; *American Fire & Cas. Co. v. State Farm Mut. Auto, Ins. Co.* (1973) 290 Ala. 21 [273 So.2d 186, 188]; *Durbin v. B.W. Capps & Son, Inc.* (1988) 522 So.2d 766, 768; *Patterson v. Harris, supra,* 674 So.2d at p. 69.) Under Alabama law, however, there are a number of theories by which the negligence of the driver may be imputed to the owner of the automobile. These include an agency relationship (*Blair v. Greene* (1945) 247 Ala. 104 [22 So.2d 834, 838]; *Howell v. Birmingham Nehi Bottling Co.* (1958) 267 Ala. 290 [101 So.2d 297, 301]; *Towry v. Moore* (1968) 281 Ala. 644 [206 So.2d 889, 891–892]; *Land v. Shaffer Trucking, Inc.* (1973) 290 Ala. 243 [275 So.2d 671, 674–675]) and negligent entrustment (*Gardiner v. Solomon* (1917)

---

[13] Vehicle Code section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner." Vehicle Code section 17151, subdivision (a) provides in pertinent part: "The liability of an owner [of a motor vehicle] . . . is limited to the amount of fifteen thousand dollars ($15,000) for the death of or injury to one person in any one accident and, subject to the limit as to one person, is limited to the amount of thirty thousand dollars ($30,000) for the death of or injury to more than one person in any one accident and is limited to the amount of five thousand dollars ($5,000) for damage to property of others in any one accident."

200 Ala. 115 [75 So. 621, 623]; *Rush v. McDonnell* (1925) 214 Ala. 47 [106 So. 175, 177]; *Spurling v. Fillingim* (1943) 244 Ala. 172 [12 So.2d 740, 742]; *Dean v. Johnston* (1968) 281 Ala. 602 [206 So.2d 610, 613]; *Cooter v. State Farm Fire & Cas. Co.* (1977) 344 So.2d 496, 497; *Chiniche v. Smith* (1979) 374 So.2d 872, 874). Thus, Alabama law has, through its case law, developed an allocation of liability in vehicle negligence cases. Alabama's judicially formulated permissive user law imposes liability on the actively negligent permissive user, rather than the owner of the vehicle. In doing so, that law advances a fundamental state interest in deterring negligent driving on Alabama's roadways by holding negligent drivers liable for their conduct, while at the same time shielding nonculpable vehicle owners from any of the financial burdens caused by actively negligent drivers. (See *Kim v. Paccar Financial Corp.* (App.Div. 2006) 385 N.J. Super. 142 [896 A.2d 489, 492].)

Alabama also has a legitimate interest in not subjecting its residents and businesses to the laws of other states that expand liability based on vehicle ownership beyond the traditional common law principles discussed above, such as agency and negligent entrustment. And it has a further interest in not having vehicle owners and drivers in its jurisdiction subjected to different liabilities based on the fortuity of which state a plaintiff happens to be a resident. Thus, Alabama has an interest in the uniform application of motor vehicle laws to owners and drivers in Alabama.

 California, on the other hand, does not have similar interests in having its permissive user statute (Veh. Code, § 17150) applied in this case. "By statute, California has long provided for liability of the owner of a vehicle to third persons for damages sustained by them as the result of negligent operation of the owner's vehicle by a driver who has the owner's consent to drive. . . . [¶] The statute, as originally enacted, constituted a departure from liability recognized at common law, and has been interpreted in numerous cases as a statute subject to strict construction." (*Hartford Accident & Indemnity Co. v. Abdullah* (1979) 94 Cal.App.3d 81, 87–88 [156 Cal.Rptr. 254].) "[T]he imputed negligence act was designed to place upon the owner of a motor vehicle liability for injuries in its operation by another with his permission, express or implied, and thus hold the owner answerable for his failure to place that instrumentality in proper hands . . . ." (*Weber v. Pinyan* (1937) 9 Cal.2d 226, 229 [70 P.2d 183].) The imposition of liability upon vehicle owners for the negligence of permissive users also serves to protect third parties who are injured as a result of such negligence. (*Galvis v. Petito* (1993) 13 Cal.App.4th 551, 556 [16 Cal.Rptr.2d 560] ["The intent of the Legislature in imposing liability on [a vehicle] owner is to protect third parties who are injured through the negligent operation of the owner's vehicle by a permissive user"].)

Based on the foregoing authorities, it appears that Vehicle Code section 17150 is directed primarily at motivating vehicle owners who allow others to use their vehicles within California to exercise care in the selection and supervision of such permissive users, and at protecting persons using California roadways. Thus, applying California's statute to Budget's conduct within the State of Alabama would not further California's interests in controlling the permissive use of vehicles within California's borders and in compensating accident victims injured on California roadways.

California, however, does have a legitimate governmental interest in having its permissive user statute applied based on Castro's status as a California resident. Application of that statute to circumstances such as these would serve to ensure that California residents injured in traffic accidents in other states would be compensated for their injuries and not become dependent on the resources of California for necessary medical, disability, and unemployment benefits.

Although Castro's individual financial circumstance and the possible cost to California taxpayers and businesses are legitimate concerns for California, they are not sufficient to reallocate Alabama's and California's " 'respective spheres of lawmaking influence.' " (*Offshore, supra,* 22 Cal.3d at p. 165.) In *Offshore,* the California plaintiff went uncompensated for a substantial loss. Nevertheless, the court concluded that "[b]y entering Louisiana, plaintiff 'exposed [it]self to the risks of the territory,' and should not expect to subject defendant to a financial hazard that Louisiana law had not created. [Citation.]" (*Id.* at p. 169.)

Similarly, by entering and driving in Alabama, Castro voluntarily exposed himself to the risks of that "territory," and therefore plaintiffs should not expect to subject Budget to a "financial hazard" that Alabama law had not created. Based on the respective governmental interests of Alabama and California, Alabama's interest in allocating liability and deterring negligent driving within its borders would be more impaired by the application of California's permissive user statute than would California's interests if Alabama law is applied. The trial court therefore correctly ruled that Alabama's permissive user law applied to the issue of Budget's responsibility for Diaz's negligence.

## DISPOSITION

The judgment of the trial court is affirmed. Budget is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 28, 2007, S157205.